THE STATE v. BALDWIN.

1. **Embezzlement:** ELEMENTS OF THE CRIME. The crime of embezzlement embraces all the elements of larceny, except the actual taking of the property embezzled, that being already rightfully in the possession of the embezzler.

2. ——: INSUFFICIENT EVIDENCE: GOOD CHARACTER. Defendant was charged with embezzling the funds of a railway company, but it appeared from the evidence that he had been a trusted employe of the company for many years, and was a man of unblemished reputation for honesty, and that the circumstances were such that others might have embezzled the money; and the only evidence against him was the fact that he tried for a time to conceal the loss of the money, but that fact he explained in a manner consistent with honest motives. *Held* that a verdict of guilty could not be sustained.

*Appeal from Henry District Court.*

TUESDAY, DECEMBER 7.

THE defendant was indicted for the crime of embezzlement. From a judgment that he be imprisoned for a term in the penitentiary he appeals to this court.

*L. G. & L. A. Palmer*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

ROTHROCK, J.—The cause was submitted to this court upon what appears to be a full report of the evidence. There was no argument submitted upon the part of the state. The defendant was in the employ of the Chicago, Burlington & Quincy Railroad Company for some ten or twelve years in the capacity of a station agent. For some fifteen months prior to January, 1884, he was agent at Mount Pleasant, in this state. He was intrusted with all the business of the company at that station pertaining to the freight and ticket department; the station being one at which considerable business was transacted. There were some four or five persons

employed in and about the station, including telegraph operators and clerks. The ticket office was one at which coupon tickets were sold. In January, 1884, it was discovered that the defendant was short in his cash remittances to the company. A traveling auditor was sent to the office at Mount Pleasant, and upon an investigation he found that the shortage was over $1,100. The defendant was removed, and the shortage was the basis for the prosecution by which he was convicted of the crime of embezzlement. The jury found that he was guilty of the conversion of $100.

The material question in the case is, was the jury warranted from the evidence in finding the defendant guilty? In other words, was the evidence sufficient to support a finding that the defendant received the money in his possession, and, with the felonious intent of stealing it, converted it to his own use. The crime of embezzlement embraces all of the elements of larceny, except the actual taking of the property or money embezzled. It is, as the court instructed the jury in this case, the larceny of money or property rightfully in the possession of the party charged with the crime.

1. EMBEZZLE-
MENT: ele-
ments of the
crime.

The evidence shows that there was a safe and a money drawer in the office, and the freight books were kept in the freight office, and there was a money drawer in that office. As the defendant could not well be in both offices at the same time, and could not remain on duty for twenty-four hours in each day, it was absolutely necessary that the telegraph operators and the clerks employed should be intrusted with the handling of the money of the company, to some extent at least. There was a day telegraph operator and a night operator. The principal passenger trains passed the station in the night, and the night operator sold tickets, and took in most of the money for passenger fares. The money collected on freights was taken from the freight house money drawer, and put in tne safe in the ticket office, and commingled with the moneys

2. ——: in-
sufficient evi-
dence: good
character.

received from the sale of passenger tickets.   In the evening of each day the defendant made up his cash remittance of money to be sent to a bank in Chicago for the treasurer of the company.   This remittance was sent by express, on a train which passed the station after the defendant left for the night.   Some two or three of the employes of the company had the combination of the safe, and full access to the money of the company in the safe as well as the money drawers.

The only evidence against the defendant is that, when he discovered that the money was short, he held way-bills for freight, or, as the traveling auditor expresses it, he suppressed way-bills, and held them back without reporting them, and reported the oldest bills, or those first received.   It is true, this is competent evidence that he attempted to conceal the shortage, and the jury might infer therefrom that he intended to defraud the company.   But, in view of the fact that there were a number of other persons who had the same opportunity to commit the crime that the defendant had, and in view of the further fact that it appears from the evidence, without conflict or contradiction, that the defendant had been for years a trusted employe of the company, and was a man of unblemished character for honesty,—a reputable citizen with a wife and three small children,—the jury should have accepted the explanation he gave of his conduct, which was that he did not convert to his own use one cent of the money of the company, and that he held back the bills for the purpose of discovering the thief.   It may have been that it would have been wiser to have reported the losses at once as they occurred.   But, in view of all the evidence, we do not think there was any warrant in finding that the defendant was the guilty party.   In our opinion, the evidence tends strongly to show that the $100 which was the basis of the verdict was abstracted from the package after it was made up for transmission, either by persons who had access to it at Mount Pleasant, or at Chicago, where it was sent.   The defendant was a witness in his own behalf, and he testified

that he did not at any time retain or convert to his own use any of the money of the company. In view of his acknowledged good character and reputation, and of the fact that the money might well have been stolen by others, we think his explanation of his conduct should have been accepted as true.

REVERSED.