HENRY L. WHITE, Appellant, v. INTERNATIONAL TEXTBOOK CO., ET AL.

**Embezzlement:** FRAUDULENT INTENT. An essential element in the crime of embezzlement is fraudulent intent to convert the money or property of another.

**Malicious prosecution:** PROBABLE CAUSE: EVIDENCE. In this action for maliciously prosecuting plaintiff for embezzlement, the evidence is held to require a submission of the issue of probable cause for believing plaintiff guilty.

**Malicious prosecution:** MALICE. Malice may be inferred by the jury from a want of probable cause. So too, where the evidence justified a finding that a criminal prosecution was resorted to for the purpose of enforcing payment of a civil debt, a finding that the prosecutor was actuated by malice would follow.

**Same:** ADVICE OF COUNSEL. To be available for the purpose of rebutting malice in the institution of a criminal prosecution, the advice of counsel must have been based upon a full statement of all the facts within the prosecutor's knowledge, or which by reasonable diligence might have been ascertained; and the advice must have been acted upon in good faith, the prosecutor believing there was good cause for the prosecution.

*Appeal from Linn District Court.*—HON. WM. TREICHLER,
Judge.

FRIDAY, JULY 2, 1909.

REHEARING DENIED, FRIDAY, OCTOBER 1, 1909.

ACTION for damages resulted in a directed verdict for
defendants, and judgment thereon. The plaintiff appeals.
*Reversed.*

*John N. Hughes,* for appellant.

*W. F. Fitzgerald* and *D. C. Harrington,* for appellees.

LADD, J. This is an action for malicious prosecution.
On an information, accusing plaintiff of the crime of
embezzlement, filed with a justice of the peace of Marshall
County by R. C. Griswold, at the instance of O. O. Crane,
under direction of the International Text-Book Company,
plaintiff was arrested and lodged in jail. After all the
evidence had been introduced, the trial court, being of
opinion that it failed to make out a case, directed the
jury to return a verdict for the defendants. The correct-
ness of this ruling alone is challenged on this appeal.

The plaintiff had been engaged in soliciting contracts
for scholarship in the international correspondence schools
of, and making collections for, the International Text-Book
Company of Scranton, Pa., since January 28, 1907, but
had not met expectations in the results accomplished, and
on September 24th of that year was discharged. On
that day, and the one before, he had collected $89.30 for
the company, and so reported to the company, adding that
he was holding the collections until it settled with him,
and that he was ready to remit as soon as settlement could
be made. Under the contract of employment he was not

to "have the right to retain, for any purpose whatever, any moneys collected by him for said employers, but shall account for and deliver or transmit each day to the superintendent of said district, or other authorized representative of said employers, all moneys and contracts for scholarship received by him for them." He was to bear his own expenses, and receive "a salary of two and sixty eight and one third one hundredths dollars per day, except Sundays, payable weekly," and in addition certain commissions. Other conditions are not material. He received what is called a "window display outfit," for which he agreed that $5 per month for four months should be deducted from his salary as a guaranty of its return in good condition. Should any parts not be returned, or be returned in condition unfit for use, schedule prices thereof were to be deducted from this $20, and also cost of repairing trunk in which display articles were packed, and the balance returned on the termination of the contract. Upon discharge he had delivered this trunk and outfit to Griswold, who was division superintendent, acting under the direction of Crane, the district superintendent, in pursuance of the agreement under which he received them, providing "that the amount deducted from my commissions shall be refunded to me upon the return of this window display outfit to the district office, less any charges as specified above, authorized by the superintendent of the district, and less the return transportation charges."

It is important to note that plaintiff was to "account for and deliver or transmit each day to the superintendent of said district or other authorized representative," and that his display outfit and trunk were to be returned to such superintendent who was authorized to make the deductions mentioned. On September 25th the district superintendent inquired by telephone whether plaintiff was gong to turn over to the company the money collected, and was told by plaintiff that he was ready to settle, and

would pay over the difference between what he owed the company and what the company owed him. To this, according to plaintiff, Crane replied that unless he sent the whole amount at once, he would have him arrested. Three days later Crane called on him, and refused an offer to pay the difference, and insisted that he remit the entire amount to the company, and receive what was due him from it, adding that he did not believe he intended to embezzle the money, but that he (Crane) must obey orders from the company or lose his job. Another call was made the same day, when the above threat is said to have been repeated. A week later Crane called, when plaintiff repeated his offer, which again was refused. This was repeated on September 14th, when Crane said plaintiff's salary and commission checks were there, save $4 of his salary, and he requested settlement without allowing the deposit for the trunk and window display outfit. Plaintiff declined to do this, but said that unless settlement was made, he would remit the difference to the company the next day. Crane replied that unless he settled the way proposed, the constable was there and would arrest him. Upon refusal the constable served a warrant as stated. After confinement four hours, he paid Crane the amount heretofore mentioned, less what was due him for salary and commissions, and also $10.40 as costs, and thereupon the constable released plaintiff, and the cause was dismissed by the justice of the peace. On the other hand, Crane denied having threatened to cause the arrest of plaintiff; testified that on September 30th he had telegraphed the company: "Representative White short $89. Shall I arrest him?" and received the answer: "Consult J. M. Holt, Atty., Marshalltown, with reference to arrest of White and be guided by his advice. Harrington will write Holt today." Thereupon Crane consulted the attorney, and submitted the contracts with plaintiff; told him what he had said to plaintiff; explained that he

could not settle with plaintiff because the latter should remit to the Chicago office, and he would receive his salary and commissions from the company; informed him how much was due plaintiff, and substantially all the details, save that plaintiff had repeatedly offered to pay the difference between what was owing to and by the company. Holt testified that Crane had said to him that plaintiff "had collected about $89, as I remember, money of the company, which he had declined to account for, or to pay over to the company, or to pay to him as the division agent or superintendent. He showed me the contract, which provided, as I recollect, that he had no right to retain any of the moneys belonging to the company for any purpose whatever, but should remit and account for them daily. He also stated that he had made demand under his instructions upon White for settlement of the account, and asked that he either make the accounting and remittance to the Chicago office or to him, and that Mr. White positively refused to make an accounting or settlement demanded until the company first paid him a small amount, due him either as his commission, or for services. I think the amount was $18 or $20. He told me there was a trunk and contents over which there was some difference or dispute, and I think Mr. White had deposited $20 as security for the return of the trunk and contents in good condition, and some of the instruments had been injured, and that Mr. Crane could not settle that part until the instruments were returned to Chicago for examination. I think the difference on this was about $10, leaving a balance due the company, he said, I think, of somewhere between $40 and $50, for which he positively, as Mr. Crane stated, refused to make any accounting or payment." Also that Crane showed him the contracts, told him there was no dispute as to the amount collected, and explained the dispute as to the outfit.

With this information Holt advised that the plaintiff was guilty, but that every effort be made before causing his arrest to settle with him. On the day of the arrest Crane telephoned him to have the constable come to Cedar Rapids, as he feared plaintiff was about ready to leave the State, and that he had refused to settle or make an accounting. And yet plaintiff had never refused to settle or make an accounting, but had expressed a readiness to do so at all times. The amount to which he was entitled as salary and commissions was mere matter of computation, and he had returned the outfit and trunk to the district superintendent as agreed, who, according to the contract, was to make the deductions from the $20 deposited, if these were not in the condition required. If inspection were necessary, nearly three weeks had elapsed within which this might have been had. Surely the company had had ample time prior to the arrest within which to ascertain the amounts which should be allowed the plaintiff, and just why the defendants should prefer to prosecute on a criminal charge rather than receive the collections made less these is not clear.

An essential element of the crime of embezzlement is the fraudulent intent to convert the money or property of another. *Kletzing v. Armstrong,* 119 Iowa, 505; *State v. Ames,* 119 Iowa, 680; *State v. Carmean,* 126 Iowa, 291; *State v. Wallick,* 87 Iowa, 370; *State v. Baldwin,* 70 Iowa, 180.

1. EMBEZZLEMENT: fraudulent intent.

At the time of settlement plaintiff did not have enough money on his person, and his brother-in-law let him have about $27. From this counsel argue that he must have embezzled the difference. That he did not have all collected with him was not conclusive proof that the remainder was not under his control. For all that appears a portion may have been left at the place from which taken when arrested by the constable, or have been deposited in a bank, or it

2. MALICIOUS PROSECUTION: probable cause: evidence.

might still be where his wife testified it was a week previous, "upstairs" at home. Moreover, testimony was adduced that Crane had disclaimed all thought of plaintiff intending to use the money himself. These circumstances, with others in connection with plaintiff's repeated expressions of readiness to settle, left it an open question whether there was probable cause for believing him guilty of the crime charged. See *Jenkins v. Gilligan*, 131 Iowa, 176; *Erb v. Ins. Co.*, 112 Iowa, 364; *Flam v. Lee*, 116 Iowa, 298.

It is insisted that there was no evidence of malice. This might have been inferred by the jury from a want of probable cause. *Parker v. Parker*, 102 Iowa, 500; *Connely v. White*, 122 Iowa, 393; *Pierce v. Doolittle*, 130 Iowa, 338. Moreover, from the testimony that Crane threatened to cause plaintiff's arrest unless he paid the entire amount in connection with the circumstances of the settlement, the jury might have found that his design in resorting to the prosecution was solely to enforce payment. If so, a finding that he was actuated by malice necessarily would have followed. *Vorhes v. Buchwald*, 137 Iowa, 721, *Potter v. Sims*, 135 Iowa, 741; *Parker v. Parker, supra; Jenkins v. Gilligan, supra.*

3. MALICIOUS PROSECUTION: malice.

It is contended, further, that any inference of the existence of malice to be drawn is rebutted by the circumstance that before beginning the prosecution the advice of counsel was taken and acted upon. To be available for this purpose there must have been (1) a fair statement of the facts within the defendants' knowledge, and which by reasonable diligence they might have ascertained; (2) the advice must have been acted on in good faith; and (3) those prosecuting must have believed there was good cause for the prosecution. *Center v. Spring*, 2 Iowa, 393, 406; *Johnson v. Miller*, 82 Iowa, 693; *Hidy v. Murray*, 101 Iowa, 67;

4. SAME: advice of counsel.

*Mesher v. Iddings,* 72 Iowa, 558; *Action v. Coffman,* 74 Iowa, 17. As appears from the facts recited, the jury might well have found that neither Crane nor Griswold believed the plaintiff guilty. Both knew he had repeatedly offered to pay the difference when ascertained, and there was testimony that Crane had stated that he did not think plaintiff intended to appropriate the company's money. Nor do we think the advice of counsel conclusive as to the company. Crane, in attempting to make the collection, was acting within the scope of his authority, and the company is presumed to have known what he ascertained in connection therewith. In directing him to submit the facts to its attorney he was made its agent for that purpose; and, unless a fair statement was made, the advice given would not necessarily operate to relieve the company from the imputation of malice. According to his testimony, as well as that of the attorney, he did not disclose that plaintiff had offered repeatedly to settle, and to pay the difference between what the company owed him and he owed the company. On the contrary, he represented to the attorney that plaintiff had refused to settle or account. The jury might have found that because of withholding this information the advice was not based on such full statement of facts as to obviate an inference of malice. The responsibility of the company, for all done subsequent to the receipt of instructions to be guided by the advice of its attorney, is not questioned. The cause should have gone to the jury.—*Reversed.*