ORVILLE GRANTEER, Appellant, v. PETER THOMPSON, Appellee.
No. 39389.

APRIL 2, 1929.

*Smith & More* and *M. B. Baily*, for appellant.

*White & White*, for appellee.

GRIMM, J.—This case has already been before the court (203 Iowa 127). In the former trial there was a verdict for the plaintiff, and the defendant appealed. The case was reversed, the court having held that the defendant's motion for a directed verdict should have been sustained.

The main facts in the case are quite fully set forth in the former opinion, and need not be restated here. It is sufficient to say that the defendant, Thompson, found one of his cows in his field, seriously injured by what appeared to be a cut inflicted by a sharp instrument. His herd, including the injured animal, had, shortly before that time, been in the cornfield belonging to the plaintiff's father, with whom the plaintiff was then living. The defendant, after a thorough examination into the facts and surrounding circumstances, laid the matter before the county attorney, who, after more or less conversation with Thompson, prepared an information charging plaintiff with injuring the cow. The information was filed. The plaintiff was bound over, and subsequently indicted by the grand jury. Upon a trial, the plaintiff was acquitted. This case was brought for malicious prosecution, based on the foregoing facts.

I. It is claimed by the defendant that he made a full and fair statement of the facts to the county attorney of the county in which the prosecution was brought; and that thereafter, the county attorney prepared a preliminary information, upon which the plaintiff was arrested, prosecuted the case before the committing magistrate, prepared an indictment returned by the grand jury, and tried the case in the district court; and that, under these circumstances, the defendant cannot be held for damages for malicious prosecution.

It appears without dispute that the defendant, after discovering the maimed condition of the animal in question, made a careful investigation of the facts and circumstances surrounding the injury to the animal. The defendant, in company with a neighbor and the defendant's son, made a thorough search and investigation of both the field of the plaintiff and the field of the defendant, as well as the fence between the fields. A careful examination was made as to the character of the wound or wounds on the animal, and, not being satisfied with the judgment of the three laymen mentioned, the defendant procured the services of an expert, a veterinarian, who, at the defendant's request, came to the defendant's farm and there professionally carefully examined the wound or wounds of the animal, and notified the defendant that in his judgment the injury to the animal was caused by some sharp object. The veterinarian said, in substance, that the wounded parts of the animal were made up of bundles of fibers; and that, unless they were severed with some sharp instrument, the edges would be ragged; and that in this case, there were no ragged edges,—the cut was clean. A very careful examination was made for blood spots in the defendant's field, and for human tracks both in the defendant's and in the plaintiff's field. Measurements were made of the tracks, and close estimates made as to the size of shoes worn by the different parties whose tracks were found in these adjoining fields. It was discovered that the fence had been repaired. A post had been set, and the fence otherwise repaired. It appears from the record that the defendant, in company with his neighbor, after having made such an investigation, went to the office of the county attorney, and there fully, fairly, and frankly related to the prosecuting attorney all the facts within the knowledge of the defendant. There is no claim that the defendant

withheld any information or that he made any misstatements in reference to the facts as he understood them. There is no evidence that the defendant had any ill feeling against the plaintiff; rather did the defendant give, as a reason for filing the information, that in his judgment he needed protection.

It appears that there was an extended conversation between the defendant and Mr. Byers, the then county attorney, participated in, to some extent, by Peter Peterson, the neighbor who helped the defendant make the investigation. The county attorney was a witness for the defense in both trials. While the evidence in the two cases is not identical, yet it is substantially the same. It appears that the county attorney preferred to proceed in the case by an investigation and indictment by the grand jury, rather than by the filing of a preliminary information, and the county attorney so stated to the defendant; but finally the county attorney told the defendant that it was up to him (the defendant) to decide as to whether the information should be filed or not; whereupon the county attorney prepared the information, the defendant signed it, the county attorney proceeded with the prosecution of the case, both on preliminary hearing—before the grand jury—and before the district court, where the plaintiff was acquitted. There is some disagreement between the county attorney and the defendant as to just what was said by the county attorney to the defendant and by the defendant to the county attorney in reference to the filing of this preliminary information. The county attorney was evidencing commendable caution, as a public official, in starting the wheels of the prosecution in motion. He and the defendant discussed the various points under consideration, but finally the public official said, "Mr. Thompson, it is up to you; if you want to sign and file an information, I will prepare one; that is my duty, to prepare informations; if you want to file one, I will prepare it;" and Thompson said, "That is what I came over here for," or words to that effect. In the discharge of his public duty as a public prosecutor of that county, it was the county attorney's duty to determine, as such official, whether a prosecution should be started. The defendant was warranted in interpreting the foregoing statement of the county attorney and the preparation of the information by him as an expression of opinion by the county attorney that the prosecution was warranted, under the facts related by the defendant to the county attorney.

Upon the former appeal in this case, we said:

"Under the rule in this state, the advice of counsel, obtained in good faith, upon a fair and full disclosure of all of the facts in possession of a party, is a complete defense to an action for malicious prosecution. *Wilson v. Lapham,* supra.; *Mesher v. Iddings,* 72 Iowa 553; *Johnson v. Miller,* 69 Iowa 562. Especially should this be the rule where the disclosure is made to the public official whose duty it is to investigate and prosecute crime. It is the duty of such official to discourage, and in a large measure it is within his power to prevent, the institution and prosecution of criminal actions which he regards as ill-advised and improper. But it cannot be said that a citizen who in good faith makes a complaint to a county attorney, with a full disclosure of the facts, is to be subjected to malicious prosecution for filing a preliminary information, rather than presenting a matter to the grand jury,—even though the county attorney recommends the latter course,—where the county attorney proceeds at once to prepare the necessary information and to have the same filed and to carry on the prosecution of the action."

We also said, in the former appeal in this case, quoting from *Wilson v. Lapham,* 196 Iowa 745, that:

" 'The absence of any conflict in the evidence on the issues of malice and want of probable cause imposed upon the court the duty of determining these as questions of law. *Jenkins v. Gilligan,* 131 Iowa 176; *Erb v. German Am. Ins. Co.,* 112 Iowa 357; *Parker v. Parker,* 102 Iowa 500.'

"In most jurisdictions, the proof of the obtaining of advice of counsel before instituting the criminal proceeding goes to the question of probable cause. 38 Corpus Juris 428. In this state, we have recognized the rule (*Wilson v. Lapham,* supra) that:

" 'If one about to instigate a criminal prosecution consults an attorney, and makes a full and fair statement of the facts to him, and such attorney advises a criminal prosecution, based upon such a statement, his advice may be relied upon as a defense to a subsequent action for malicious prosecution. *Necker v. Bates,* 118 Iowa 545; *Wilson v. Thurlow,* 156 Iowa 656; *White v. International Textbook Co.,* 144 Iowa 92; *Parker v. Parker,* supra; *Pierce v. Doolittle,* 130 Iowa 333. We said, in *Wilson v,*

*Thurlow,* supra, that: "Advice of an attorney, to constitute a good defense, must be based on a full and fair statement of the facts within defendant's knowledge, and the advice must have been acted on in good faith, and with the belief that there was good cause for the prosecution." ' "

Further in the opinion, the court said:

"It would be a serious handicap to the enforcement of criminal law if a citizen could not feel free to make full disclosure to a public prosecutor in good faith, and rely upon the advice and action of the prosecutor in drawing the necessary papers and proceeding in the prosecution of the case."

We have not set out in this opinion the testimony of the county attorney in the former trial, as abstracted and shown in the former opinion, or as abstracted in this case; but we have examined both with great care, and hold that the defendant, under the circumstances, was fully warranted in filing the information.

II. The plaintiff complains of the ruling of the court upon two questions propounded to the witness Byers, the county attorney, on cross-examination. We have carefully examined these questions, and reach the conclusion that there was no prejudicial error by the court.

The trial court was right in directing a verdict for the defendant. The judgment of the district court is—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.