W. E. GRIPP, Appellant, v. RAY CRITTENDEN, Appellee.

No. 43589.

Thomas E. Mullin, E. L. Carroll, O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellant.

Healey & Reynolds and Kenneth H. Davenport, for appellee.

Anderson, J.—This action was commenced in March, 1935, in the district court of Union County, in which plaintiff sought to recover $2,500 actual damage and $2,500 exemplary damage from the defendant by reason of the alleged false and malicious arrest and prosecution of the plaintiff by defendant. At the close of plaintiff's evidence a motion for a directed verdict made by the defendant was overruled by the court and at the close of all of the evidence the motion was renewed and was sustained by the court and a verdict was returned for the defendant under the ruling and direction of the trial court, and from such ruling this appeal is prosecuted.

In order to dispose of the matters urged on the appeal it seems necessary that the facts as disclosed by the record be quite fully recited. Plaintiff and defendant are farmers residing in Pleasant Township, Union County, Iowa. Pleasant Township is a school township organized as provided in section 4124 of the Code. It is divided into nine subdistricts. The plaintiff with his wife and one daughter of school age reside in subdistrict No. 1, and the defendant resided in another of the subdistricts in said school township. The defendant was, during the time this controversy arose, president of the school board of said township and Roy Weeters was director of subdistrict No. 1. The plaintiff had been a member of the school board and its president for a number of years preceding the incumbency of the defendant. So far as is shown by this record the controversy finally result-

ing in the instant case grew out of the question as to whether or not school would be held in subdistrict No. 1, the plaintiff's district, during the school year of 1934 and 1935, and this controversy originally arose on account of the number of pupils residing in said subdistrict No. 1. At the annual July meeting in 1934, the board voted to maintain school in district No. 1. Later and on July 23d, the board again considered the matter and voted not to maintain school in said district with less than five pupils. It appears that the board concluded that the enrollment for the school year in question in said district No. 1 would be less than six, and that the average daily attendance would be less than five. However, a contract was entered into between the school board and a teacher, Bessie Caviness, providing for the teaching of school in said district for twelve weeks commencing August 27th, 1934. School was opened in the district on said date with five children enrolled. About a week after the school was opened the controversy as to its maintenance seems to have been still alive and the county attorney and county superintendent of schools called the school board together. At this meeting the county superintendent and the county attorney advised the school board that they had visited the school in district No. 1 and found five scholars in attendance, and that they seemed to be getting along all right and thought it best to let the school run. The county superintendent told them that she found that in district No. 4 there were only four scholars but that she would give her consent that both schools be maintained. Then the county superintendent did give her written consent, in accordance with her oral statement, in a letter under date of July 23d, written to the defendant as president of the school board. The letter is as follows: ''Mr. Ray Crittenden, Thayer, Iowa. Dear Sir: I am enclosing my written permission to your maintaining school in No. 1 next term. I hope that your school board will not let personal feelings influence them to act against their best judgment in school affairs. All of the schools are rather small, and it will not take a great deal of moving around to close the majority of them. You men know as well as I know that these hills can become pretty bad at times during the school year and makes it difficult to transport children. This should be carefully considered. A teacher may be employed for $40.00 per month. You remember when No. 2 was closed a few years ago a teacher with a first grade certificate could draw $75.00 per month. The

last part of Section 4233-e1 gives the parent the permission to choose the school to which his children are sent. If a couple of schools are closed and parents choose to send to towns, it will tend to tear down all of your schools to a certain degree.'' Accompanying said letter and perhaps indorsed thereon was the following: ''According to Section 4231 of the school laws, I am consenting to the maintaining of school at No. 1 in your township for the next year. Yours truly, Ella M. Day. County Superintendent.''

It is agreed that the foregoing letter and consent to maintain school in subdistrict No. 1 was received by the defendant. The county superintendent testified that she had a conversation with the defendant in September, 1934, and again gave her permission to keep the school open, and the defendant told her that there was some objection to keeping the school open *''on account of an old grudge.''* She further testified that at a meeting with the board, the county attorney, and herself, they spent the most of an afternoon and that she told the defendant and other members of the school board that they should not close any of the schools unless it was absolutely necessary, and that they should not permit personal feelings to influence their judgment or action in that regard. She further testified that she told the board that another school was being maintained in the district with only four children while there were five in No. 1 at the same time. She also testified that she told them that her written permission made it legal to maintain a school in No. 1.

Roy Weeters, the director in subdistrict No. 1, was in attendance at this meeting of the school board and corroborated the testimony of the county superintendent. Weeters also testified that about a week after the school commenced the defendant came to his home and said, ''they closed our school at the last meeting they had, and I asked him if they closed No. 4, and he said, 'No', and I asked him why they closed ours instead of not closing No. 4, too, and he said, 'Just an old grudge was what it was.' '' There were five scholars at the time attending No. 1.

After the school had been opened and maintained for a few weeks the school board met again in called session and voted to close the school in No. 1. This was some time in September or the first part of October, at which it was determined to close the school in district No. 1 notwithstanding the existence of the teacher's contract covering the period for twelve weeks from

August 27th. Following this meeting of the board the defendant had prepared and served on Roy Weeters, director of No. 1 district, and upon the teacher the following notice: "Notice to Quit. To Roy Weeters, Director in Subdistrict No. 1, Pleasant Township, Union County, Iowa. Sir: You are hereby notified that I require you to quit and surrender to me the possession of the following described premises to-wit: School house in subdistrict No. 1, located in Pleasant Township, Union County, Iowa. Also all equipment belonging to the said school. And we also demand that there be no school in said district after October 5th, 1934. You are also notified that unless you quit and surrender to me the above described premises within four days from this date, I shall take the necessary legal steps to recover possession of the same from you." Dated and signed by "Ray Crittenden". It should be noted that only four or five weeks of the term of school for which contract had been made with the teacher had expired at the time of the service of this notice. About the same time an order for the salary of the teacher for the entire twelve weeks was issued by the board and tendered to the teacher. The so-called notice to quit was ignored and the teacher continued to teach the school until the expiration of her contract. After the expiration of the contract for the first three months of the school year a new contract was made, signed by the teacher and by the subdistrict director, although it was never authorized or executed by the president and secretary of the board. School continued to be maintained however under a personal contract between the teacher and the parents of the pupils in which the parents agreed to pay and did pay the salary of the teacher for the ensuing term, at least. On March 1st, the record shows that by reason of other people moving into the district there were eight children of school age living in the subdistrict and enrolled as pupils attending school therein.

It appears that while the controversy was pending before the school board and on November 19th, the defendant as president of the board wrote a letter to the state superintendent apparently for advice or direction as to what course to pursue in relation to the matter of keeping the school in No. 1 open. And on November 23rd, received from the state superintendent the following letter in answer: "Mr. Ray R. Crittenden, Thayer, Iowa. Dear Mr. Crittenden: In answer to the question you set out in your letter of November 19 I shall call your attention to

section 4227, which provides that 'The board of directors shall determine the number of schools to be taught. * * *' There are, however, two limitations placed upon the board in its power to determine the number of schools that shall be taught in the district. Those two limitations are set out in section 4231, as amended by the extra 45th G. A. and are as follows: (1) A board has no authority to contract with a teacher for the next ensuing term in an elementary school if the average daily attendance in such elementary school the last preceding term was less than five elementary school pupils of school age, who are residents of the district or subdistrict, as the case may be, unless the board first secures written permission from the county superintendent.

" (2) The board cannot contract with a teacher for the next ensuing term in an elementary school if it is apparent that the average daily attendance in such school if opened will be less than five or the enrollment less than six elementary pupils of school age who are residents of the district or subdistrict, as the case may be, unless the board first secures the written permission of the county superintendent.

"The consent of a county superintendent to the continuance of a school when such consent is required does not make it mandatory upon the board to continue such school; it merely confers upon the board a power it would not have without such consent. But the board's action under such consent is a matter that is subject to review on appeal to the county and state superintendents. In other words, if the county superintendent consented to the continuance of a school and did so in the manner set out in section 4231 and the board should pass a resolution not to open the school, then any person in the district who is aggrieved by the board's refusal to continue the school under the consent of the county superintendent, would have the right of appeal to the county superintendent as provided in section 4298. Either party to such an appeal would have the further right of appeal to this office in the event he was not satisfied with the county superintendent's decision on appeal.

"Section 4229 requires that a teacher's contract be in writing and that it be signed by the president of the board and the teacher. But the president would have no authority to sign a contract that had not been previously authorized by the board in

session. If a teacher attempts to teach a school without authorization by the board and without a written contract properly signed, it would be within the legal rights of the board to prevent her from so doing.

"The method of procedure in such a case would, of course, be injunction. But if a board should allow a teacher to continue to teach without resorting to legal means to prevent such teaching, the probabilities are that the teacher could draw her salary for the time she taught.

"I shall again call your attention to section 4227 which further provides that the board shall determine the particular school which each child shall attend. Very truly yours, Agnes Samuelson, Superintendent of Public Instruction."

It will be observed that the superintendent of public instruction advised the defendant as to the law in reference to keeping a school open with an enrollment less than six or an average daily attendance of less than five, and also advised that in case a teacher attempts to teach a school without authorization of the board it would be within the legal rights of the board to prevent her from so doing. She further advised "the method of procedure in such a case would, of course, be injunction."

It is shown that after the expiration of the teacher's twelve week contract she continued to teach the school during the winter term, or succeeding twelve weeks, under an agreement with the subdistrict director and the school patrons; that the school board then passed a resolution or motion directing that the schoolhouse be padlocked, and during the Christmas vacation a padlock and chain was attached to the door of the schoolhouse by staples so that the door could not be opened without taking the padlock and chain off. This padlock and chain was attached to the door of the schoolhouse by the defendant and there does not seem to have been any notice of such act given to the patrons of the school or the teacher. On the Monday morning following the Christmas vacation the plaintiff, and one Lafferty, and one Jenson went to the schoolhouse and Lafferty, with a claw hammer, pulled the staples holding the chain and lock on the door and casing, and sometime later the teacher opened the door with a key and entered with the pupils and continued to hold school. There is no evidence whatever that the removal of the lock and chain from the door of the schoolhouse injured, defaced, or de-

stroyed either the school building or any fixture attached thereto. Within a day or two after this occurrence the defendant Crittenden, together with the secretary of the school board, went to Creston and, as he claims, upon the advice of counsel, first caused an information to be filed before a justice of peace accusing the plaintiff and Lafferty with the crime of breaking and entering. After this information was filed they consulted the county attorney and he advised them that there was not sufficient evidence upon which to base such a charge and told them that if the plaintiff and Lafferty were guilty of anything, it was malicious destruction of property. The defendant Crittenden and secretary then returned to the office of the justice of peace and the first information filed was withdrawn and destroyed and an information was filed charging the plaintiff Gripp and Lafferty with a violation of section 13080 of the 1931 Code by maliciously injuring and defacing the school building in district No. 1, Pleasant Township. A warrant was issued under this information and the plaintiff herein and Lafferty were arrested and taken before the justice of peace and required to give bond. Later the information and criminal action was dismissed by the county attorney without any hearing.

Prior to the filing of the informations above mentioned, it appears that the defendant Crittenden and secretary of the board consulted an attorney, a Mr. McEniry, and claim to have told Mr. McEniry some of the facts which we have detailed above, but at that time the defendant Crittenden had no personal knowledge that the chain and padlock had been removed from the door by the plaintiff and Lafferty and could not have told the attorney that there had been any injury or defacement of the school building in removing the chain and padlock from the door thereof. The county attorney, a Mr. Camp, testified that he told the defendant Crittenden and the school secretary that he did not think they could establish the crime of breaking and entering because that had to be with the intent to commit a public offense, and that there was doubt in his mind whether it was a public offense. There is no testimony indicating that the county attorney received a full and fair and complete statement of the facts and situation from the defendant Crittenden at the time the defendant sought his advice, and the record as to what facts were disclosed to Attorney McEniry is not satisfying.

As we have indicated, the motion to direct a verdict at the

close of plaintiff's testimony was overruled, but the same motion was renewed and sustained by the court at the close of all the testimony. The case was on trial in the lower court seven days and at the conclusion the court filed or dictated an opinion and ruling covering sixteen printed pages in the abstract. We have read and re-read the remarks of the trial court in ruling upon the motion to direct and conclude that the ruling is based principally upon two propositions. First, that the facts as to the removal of the lock and chain from the school building not being in dispute, that the fact as to the plaintiff's guilt was a matter of law for the court to determine, and the court did determine that fact and found the plaintiff guilty of the crime charged. The court further found on the facts that we have detailed that the defendant Crittenden had probable cause to believe the plaintiff herein guilty of the crime for which he was arrested, and that there was no evidence of malice and none could be inferred from the testimony. Second, the court further found from the facts that we have detailed that the defendant Crittenden relied upon the advice of counsel in filing the information and causing the plaintiff's arrest after he had made a full and fair statement of the facts surrounding the transaction.

We cannot agree with the trial court in these findings and its disposition of the case. Whether or not the school board had a right to close the school in question and padlock the door, it seems to us, is not for consideration. However, the action of the board in passing its various resolutions to close the school even while a valid contract with a teacher was in force and while the teacher was continuing to teach thereunder, and the board's willingness to pay the teacher for two months after it had decided to close the school, and the fact that the defendant Crittenden procured and caused to be served the notice to quit, which we have set out in this opinion, and placed the padlock upon the door of the schoolhouse, even though done with advice of counsel, after he had been informed by the superintendent of public instruction that injunction would be the proper method to pursue, indicates a disposition toward someone other than friendliness and good neighborliness and other than a desire to strictly follow the law providing for the administration of the affairs of the school district. We do not want to be understood as holding that the acts of the school board and its president, the defendant, preceding the institution of the criminal prosecution are suffi-

cient to show actual malice. However, these should be considered in determining whether the defendant had probable cause to believe the plaintiff guilty of the crime of which he charged him, and whether or not the defendant acted in good faith and upon the advice of counsel, after a full and fair statement of all the facts, in charging the plaintiff with the crime. It is certain from this record that the defendant Crittenden only knew, indirectly, of the removal from the schoolhouse door of the lock and chain. It is also certain that he did not know whether the plaintiff removed the chain and padlock. It is likewise certain that he had no information whatever as to whether or not the building had been injured, defaced, or any part thereof destroyed. The evidence, without dispute, shows that there was no injury or destruction to the building or any part thereof. The evidence shows too, that Weeters, the subdistrict director, authorized the removal of the lock and chain, so far as he had authority.

Malice is a necessary element of the crime charged against the plaintiff, and there is no testimony that what was done in removing the chain and padlock was done with any malice whatever. The pupils' books were locked up in the schoolhouse by the attachment of this lock and chain. The teacher was hired and paid by the plaintiff and other patrons of the school to continue teaching therein. Strictly, that may not have been legal under the law, without the consent of the school board, but it is difficult to conclude that the plaintiff and Lafferty were actuated by any malice in their attempt and determination to keep the school open and furnish a teacher at their own expense.

The defendant Crittenden ignored the advice of the superintendent of public instruction to proceed by injunction, but elected to charge the plaintiff with the crime first, of breaking and entering and second, with malicious injury, defacement, and destruction of public property. We are unable to agree with the trial court that under this record the question as to the guilt of the plaintiff was for the court to determine, and that whether or not the defendant herein acted upon the advice of counsel, in good faith, after a full and fair statement of the facts was for a determination of the trial court.

That the plaintiff was prosecuted substantially as he alleges; that the defendant instituted the prosecution; and that the prosecution was terminated in plaintiff's favor are shown without

controversy. The other elements necessary to sustain an action for damages for false arrest and malicious prosecution are that the prosecution was malicious; that the defendant Crittenden had no probable cause for instituting the prosecution; and that damages resulted to the plaintiff therefrom. It seems to us that under this record the plaintiff had a right to have the last three mentioned controversial facts submitted to a jury. As to whether the prosecution was actuated by malice is a question of fact, and malice may be shown or inferred from certain facts or it may be presumed from a want of probable cause.

A prosecution induced by any desire other than to bring the accused to justice may be said to have been instituted through malice. So, in this case, if there was a want of probable cause, shown by the testimony, then the question of malice must be for the jury to determine. Center v. Spring, 2 Iowa 393; Ritchey v. Davis, 11 Iowa 124, 18 R. C. L., Malicious Prosecution, Sec. 17. We have held that ''Except where the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion therefrom, the question whether there was or was not probable cause must be determined by the jury.'' Wilson v. Thurlow, 156 Iowa 656, 658, 137 N. W. 956, 957. In the same case we said that, ''Before commencing a criminal prosecution, the accusing person must use the means which an ordinarily reasonable and prudent man would exercise to learn the facts.'' See also White v. Text Book Co., 156 Iowa 210, 136 N. W. 121, 125, 42 L. R. A. (N. S.) 346; Ross v. Hixon, 46 Kan. 550, 26 P. 955, 12 L. R. A. 760, 26 Am. St. Rep. 123; 38 C. J. 410, sec. 44.

It is for the jury to decide, ordinarily, whether or not the defendant Crittenden had an honest belief in the plaintiff's guilt. A state of mind is a fact like any other, to be proved by the testimony and surrounding circumstances. In the instant case had the defendant herein investigated the facts he would have found that none of the men who were instrumental in removing the padlock and chain entered the schoolhouse, and that no injury or defacement was caused by the removal of the chain and padlock. And had he so investigated and so reported to the attorneys whom he consulted, the attorneys might have advised him to follow a different procedure. In connection with this question of malice it must be noted that there is evidence that the defendant herein had said that the school was being closed

on account of an old "grudge". It is true there is no direct evidence as to what this grudge was or whom it was against, but if the statement was made, and such was the reason for closing the school, then it may be presumed that it was against someone in district No. 1 who was interested in keeping the school open, and, under this record, such person or persons could only be the plaintiff and Lafferty and Jenson. And if defendant Crittenden in padlocking the schoolhouse and in causing the arrest of the plaintiff was actuated by a grudge or ill feeling, then the prosecution could not be said to have been instituted in good faith. Independent of the advice of counsel it must be shown that the defendant acted in good faith and in the belief that there was good cause for the prosecution, and whether or not the defendant so acted is ordinarily a jury question. We have said, "Whether defendant in good faith acted on the advice of the county attorney, is generally a question for the jury. * * * Advice of an attorney to constitute a good defense must be based on a full and fair statement of the facts within defendant's knowledge and the advice must have been acted on in good faith and with the belief that there was good cause for the prosecution, and whether or not these things were done is a jury question." Wilson v. Thurlow, supra; White v. Text Book Co., supra; Center v. Spring, supra; Acton v. Coffman, 74 Iowa 17, 36 N. W. 774.

In the White case, 144 Iowa 92, 98, 121 N. W. 1104, 1107, we said:

"To be available for this purpose there must have been (1) a fair statement of the facts within the defendant's knowledge, and which by reasonable diligence they might have ascertained; (2) the advice must have been acted on in good faith; and (3) those prosecuting must have believed there was good cause for the prosecution."

The defendant Crittenden testified in cross examination that he did not suppose the plaintiff and Lafferty did any damage in removing the lock, chain and staples, and that he did not inquire of anyone to find out if the children's books were locked up in the schoolhouse. He further said, "I agreed with the other directors at the December meeting that if anyone took the padlock off, that I would have them arrested. Prior to the time I talked to counsel I had made up my mind to have anyone arrested who took off the padlock. This was two and one-half

weeks before I saw McEniry. I carried that intention in my mind all the time before I saw McEniry." It is true defendant herein modified this statement somewhat in redirect examination, but the statement was for the consideration of the jury on the question of the good faith of the defendant in instituting the prosecution.

The statute under which the plaintiff was arrested provides that the act prohibited must be done maliciously; and unless the plaintiff acted maliciously, and with a criminal intent, and actually damaged or injured the building, then he could not be held guilty of the crime charged. State v. Phipps, 95 Iowa 491, 64 N. W. 411; Kletzing v. Armstrong, 119 Iowa 505, 93 N. W. 500; Freeman v. Strobehn, 122 Iowa 157, 97 N. W. 1094; State v. O'Neil, 147 Iowa 513, 126 N. W. 454, 33 L. R. A. (N. S.) 788, Ann. Cas. 1912B, 691; State v. Waltz, 158 Iowa 191, 139 N. W. 458.

It is our conclusion that the trial court erred in sustaining defendant's motion for a directed verdict for the reasons mentioned in the foregoing opinion. This conclusion results in a reversal.—Reversed.

RICHARDS, C. J., and KINTZINGER, HAMILTON, STIGER, DONEGAN, and PARSONS, JJ., concur.