HENRY L. WHITE, Appellee, v. INTERNATIONAL TEXTBOOK COMPANY et al., Appellants.

**CORPORATIONS:** Liability for Acts of Agent—Causing Arrest—Malice—Exemplary Damages. A corporation may be liable to exemplary damages for the malicious acts of its agents acting within the scope of their employment and instructions. So *held* where the agent, with the acquiescence of the defendant corporation, caused plaintiff to be arrested.

*Appeal from Linn District Court.*—W. N. TREICHLER, Judge.

THURSDAY, DECEMBER 16, 1916.

ACTION for malicious prosecution against defendant Textbook Company, its agents and servants. Verdict and judgment for plaintiff in the sum of $2,500, and defendants appeal.—*Affirmed.*

*F. L. Anderson* and *D. C. Harrington,* for appellants.

*John N. Hughes* and *C. R. Sutherland,* for appellee.

DEEMER, C. J.—I.    This case is not new; it has been before us on four different appeals, and has been tried to a jury at least five times, with varying results.    The opinions heretofore pronounced will be found in 144 Iowa, 92; 150 Iowa 27; 156 Iowa 210; 164 Iowa 693, and these dispose of nearly every question which could arise in the case.    These cases also recite the facts and refer to the issues tendered, so that no extended statement of either need be made at this time.    The chief complaint now made is of the size of the verdict and of the instructions given by the trial court, which permitted the jury to award the plaintiff exemplary damages against the defendant corporation.    Claim is also made that the trial court erroneously allowed the jury to award compensatory damages to plaintiff for loss of time caused by his arrest and prosecution, on the theory that there was no testimony to justify the allowance thereof.

II.    The instruction as to loss of time was not peremptory, but directed the jury to allow plaintiff compensation "for loss of time caused by said prosecution and the value thereof if any".    The jury was cautioned not to allow anything for loss of time caused by defendants' discharge of plaintiff, and warned to allow nothing on this item unless it were traceable to the prosecution.    There was sufficient testimony to justify the charge as given.

III.    The exception taken to the instruction on exemplary damages was because "the Textbook Company cannot be held liable to exemplary damages upon imputed negligence".    The defendant company also asked peremptory instructions to the effect that no exemplary damages could be awarded against it, and that in no event could it be charged with any malice, save that which might be imputed to it from its agents and representatives in Iowa.    The exception

CORPORATIONS: liability for acts of agent: causing arrest: malice: exemplary damages.

to the instruction given is bottomed upon the thought that malice could not be imputed to the company from any act of the agents and servants of the corporation, even though such agents and servants acted within the scope of their employment in causing the arrest and prosecution of the plaintiff. That this is not the law as it now exists is well settled by modern authority. Malice may be imputed to a corporation as to an individual, and it may be held liable for libel, slander, assault and battery, false arrest, malicious prosecution and other torts involving malice or willful wrong. See Cook on Corporations (7th Ed.), Sec. 15b and cases cited; 7 Ruling Case Law, Secs. 683 and 684, and cases cited. We have recently stated the rule as follows:

"That the master is liable for the consequences of a tort committed by the servant in the course of his duty, and while acting within the scope of his employment, is a rule well established by many authorities. *Moore v. Fitchburg R. Corporation*, 4 Gray (Mass.), 465 (64 Am. Dec. 83); *Ramsden v. Boston & A. R. Co.*, 104 Mass. 117 (6 Am. Rep. 200); *Bass v. Chicago & N. W. R. Co.*, 36 Wis. 450, 463 (17 Am. Rep. 495). And when a tort has been committed by an agent within the line of his employment, a joint action may be maintained against the principal and the agent. *Hewitt v. Swift*, 3 Allen (Mass.) 420, 422; *St. Louis, etc., R. Co. v. Dalby*, 19 Ill. 353, 374. But the principal cannot be held liable in exemplary damages for the wanton acts of the agent, unless it participated, either expressly or impliedly, or by conduct authorizing or approving the act, either before or after it was committed. *Lightner Mining Co. v. Lane*, 161 Cal. 689 (120 Pac. 771, Ann. Cas. 1913 C, 1093); *Lake Shore & M. S. R. Co. v. Prentice*, 147 U. S. 101 (13 Sup. Ct. Rep. 261; 37 L. Ed. 97); *Haver v. Central R. Co.*, 64 N. J. Law, 312 (45 Atl. 593); *Fohrmann v. Consolidated Traction Co.*, 63 N. J. Law, 391 (43 Atl. 892); *Wells v. Boston & M. R. Co.*, 82 Vt. 108 (71 Atl. 1103; 137 Am. St. Rep. 987)." *Dunshee v. Standard Oil Co.*, 165 Iowa 625.

The testimony in this case shows that the defendant Crane was the corporation's district agent, having general charge of its business in the state of Iowa and elsewhere, and that defendant Griswold was his assistant. Each had charge over the local agents, of whom plaintiff White was one. Crane undertook to discharge plaintiff and to have him account to the company. White had a claim against the company and admitted that he had in his possession all that the company had ever charged him with, but refused to turn it over to the company until it settled his claim. There never was any charge that he used any of the company's money, or that he denied having received it; but he claimed at all times that he was entitled to hold it until the company made good his claim. In this situation, Crane wired his company that White was short in his accounts, which was untrue, as he well knew, and asked the company if he should have him arrested. The company, without any investigation as to the truth of the matter, answered him by wire, saying: ''Consult J. M. Holt, Attorney, Marshalltown, with reference to arresting White, and be guided by his advice.'' In other words, he was not to act on his own knowledge regarding the commission of the offense, but upon what an attorney should tell him. The Textbook Company's lawyer also wrote the attorney regarding the matter and was content to leave the matter in the hands of Crane and the attorney. It thus consented to the prosecution and became responsible for what these men did, in the event that they concluded to prosecute. The thought of Crane in starting the prosecution is revealed in his message to the company. He had come to the conclusion that White was short in his accounts, which was not true, save as heretofore indicated, and had concluded in his own mind to make him disgorge, even if he had to resort to a criminal proceeding. In bringing the action, he was clearly within the scope of his authority, and the prosecution, when instituted, was clearly by direction of the defendant and for its ostensible benefit. In such circumstances, the malice of

Crane would be imputed to the company, and for it defendant was responsible. As sustaining this view, see *Nesbit v. Chicago, R. I. & P. R. Co.,* 163 Iowa 39; *McKinley v. Chicago & N. W. R. Co.,* 44 Iowa 314; *Johnson v. Chicago, R. I. & P. R. Co.,* 58 Iowa 348; *Markley v. Snow,* (Pa.) 56 Atl. 999; *Bass v. Chicago & N. W. R. Co.,* 42 Wis. 654 (24 Am. R. 437) ; *Grand Rapids & I. R. Co. v. King,* (Ind.) 83 N. E. 778; *Hussey v. King,* (N. C.) 3 S. E. 923; *Reed v. Home Savings Bank,* 130 Mass. 443; *Larson v. Fidelity Mutual Life Association,* (Minn.) 73 N. W. 711; *Denver and R. G. R. Co. v. Harris,* 122 U. S. 597; Thompson's Com. on the Law of Corp., Vol. 5, p. 4944, Sec. 6312. In *Reed v. Home Savings Bank, supra,* the Supreme Court of Massachusetts said:

"It was contended at the argument, that an action for malicious prosecution so differs from other actions that it cannot be maintained against a corporation. But although, in order to maintain such an action, both malice and want of probable cause must be found, yet proof of want of probable cause will warrant the jury in inferring malice. *Mitchell v. Jenkins,* 5 B. & Ad. 588; S. C. 2 Nev. & Man. 301; *Stewart v. Sonneborn,* 98 U. S. 187; *Stone v. Crocker,* 24 Pick. (Mass.) 81; *Ripley v. McBarron,* 125 Mass. 272. And, by the great weight of modern authority, a corporation may be liable even when a fraudulent or malicious intent in fact is necessary to be proved, the fraud or malice of its authorized agents being imputable to the corporation; as in actions for fraudulent representations; *National Exchange Co. of Glasgow v. Drew,* 2 Macq. 103; *New Brunswick & C. R. Co. v. Conybeare,* 9 H. L. Cas. 711, 738, 740; *Barwick v. English Joint Stock Bank,* L. R. 2 Ex. 259; for libel, *Philadelphia, W. & B. R. Co. v. Quigley,* 21 How. (U. S.) 202; *Whitfield v. Southeastern R. Co.,* E. B. & E. 115; or for malicious prosecution, *Vance v. Erie R. Co.,* 3 Vroom (N. J.) 334; *Copley v. Grover & Baker Sewing Machine Co.,* 2 Woods 494; *Goodspeed v. East Haddam Bank,* 22 Conn. 530; *Carter v. Howe Machine Co.,* 51 Md. 290; *Wheless v. Second Nat. Bank,* 1 Baxter (Tenn.)

469; *Williams v. Planters' Ins. Co.,* 57 Miss. 759; *Iron Moun-
tain Bank v. Mercantile Bank,* 4 Mo. App. 505; *Walker v.
Southeastern R. Co.,* L. R. 5 C. P. 640; *Edwards v. Midland
R. Co.,* 6 Q. B. D. 287.''

In the case of *Hussey v. King, supra,* it is said:

''The old idea that, because a corporation had no 'soul',
it could not commit torts, or be the subject of punishment for
tortious acts, may now be regarded as obsolete. The rights,
the powers, and the duties of corporate bodies have been so
enlarged in modern times, and these 'artificial persons' have
become so numerous, and entered so largely into the everyday
transactions of life, that it has become the policy of the law
to subject them, as far as practicable, to the same civil liability
for wrongful acts as attach to natural persons; and this
liability is not restricted to acts committed within the scope
of granted power, but a corporation may be liable to an action
'for false imprisonment, malicious prosecution, and libel.'
. . . 'The doctrine which once obtained, that the master
is not liable for the willful wrong of his servant, is now
understood as referring to an act of positive and designed
injury, not done with a view to the master's service, or for
the purpose of executing his orders. . . . Whether the
servant did the act with a view to the master's service, or to
serve a purpose of his own, is a question for the jury.'
Whether the corporation authorized or participated in the
tort is matter of proof, and the defense of *ultra vires* is not
admitted. It is true that it was held in *Orr v. Bank U. S.,*
1 Ham. (Ohio) 25, that a corporation could not be sued in
an action for assault and battery, nor could it be joined in
such an action with other defendants; and in *Gillet v. Mis-
souri V. R. Co.,* 55 Mo. 315, it was held, by a divided court,
that a railroad corporation was not liable for a malicious
prosecution in the name of the state for alleged embezzlement
of its funds, but a different doctrine seems now well estab-
lished. 'Corporations are liable for every wrong they commit,
and in such cases the doctrine of *ultra vires* has no applica-

tion. They are also liable for the acts of their servants while such servants are engaged in the business of their principal, in the same manner and to the same extent that individuals are liable under like circumstances. An action may be maintained against a corporation for its malicious or negligent torts, however foreign they may be to the object of its creation, or beyond its granted powers. It may be sued for assault and battery, for fraud and deceit, for false imprisonment, for malicious prosecution, for nuisance, and for libel.' *Nat. Bank v. Graham,* 100 U. S. 699, and many authorities there cited; *Merchants' Bank v. State Bank,* 10 Wall. 604, 645; Ang. & A. Corp. § 388. 'It is no defense to legal proceedings in tort that the torts were *ultra vires.*' *Gruber v. Washington & J. R. Co.,* 92 N. C. 1. *Philadelphia W. & B. R. Co. v. Quigley,* 21 How. (U. S.) 202, was an action against the defendant (plaintiff in error) for libel. It was insisted that the railroad, being a corporation with defined and limited faculties and powers, and having only such incidental authority as is necessary to the full exercise of the faculties and powers granted by their charter; that, being a mere legal entity, they are incapable of malice, and that malice is a necessary ingredient in a libel; and the action should have been instituted against the natural persons concerned in the publication of the libel.' But a different view was taken by the court, and it was held that a corporation could be held liable *ex delicto* as well as *ex contractu,* and that this view was in consonance with the legislation and jurisprudence of the states of the Union relative to 'these artificial persons'. The subject is discussed at length in *Williams v. Planters' Insurance Co.,* 57 Miss. 759, and the note to the case as reported in 34 Am. Rep. 494, in which the authorities are collated, from which the conclusion is fully warranted that a corporation is liable for malicious prosecution conducted by one of its agents. In the still more recent case of *Denver & R. G. R. Co. v. Harris,* 122 U. S. 597, 7 Sup. Ct. Rep. 1286, in an elaborate opinion, in which many authorities are cited, it is said: 'If a corporation itself has

no hands with which to strike, it may employ the hands of others. It is now perfectly well settled, contrary to the ancient authorities, that a corporation is liable *civiliter* for all torts committed by its servants or agents by authority of the corporation, express or implied. . . . The result of the modern cases is that a corporation is liable *civiliter* for torts committed by its servants or agents, precisely as a natural person; and it is liable as a natural person for the acts of its agents done by its authority, express or implied, though there be neither a written appointment under seal, nor a vote of the corporation constituting the agency or authorizing the act.' 'The corporation and its servant, by whose act the injury was done, may be joined in an action of tort in the nature of trespass.' Pierce, R. R. 292.''

The damages are not excessive, and we see no error which would justify a reversal. The judgment must be, and it is,— *Affirmed.*

WEAVER, EVANS and PRESTON, JJ., concur.