RICHARD D. RUDOLPH, Appellee, v. GLEN DAVIS et ux., Appellants.

No. 46989.

MARCH 11, 1947.

REHEARING DENIED MAY 9, 1947.

Bennett Cullison, of Harlan, and Jones, Cambridge & Carl, of Atlantic, for appellants.

Rudolph & Rudolph and Dalton & Dalton, all of Atlantic, for appellee.

SMITH, J.—The attached property (which included "120 mixed feeding hogs") had been left by the sheriff in defendant Glen Davis' custody pending trial of the case. Nearly four months later (December 21, 1944) plaintiff caused to be served on defendants a so-called "affidavit" suggesting that the keeping of the hogs "may now be attended with such expense as to depreciate the amount of proceeds and that disposition should be made of the same by sale thereof."

Pursuant to this suggestion defendants' attorney talked with the sheriff about a proposed arrangement "whereby Mr. Davis could take the hogs to market * * * and place a portion of the money in the custody of the sheriff pending the determination of this suit." The attorney mentioned $1,600 as a proper amount to be so deposited. The action was upon a claim for $1,400 rent of the premises being occupied by defendants. Said claim was alleged to have been assigned to plaintiff by one Wilson, hereinafter referred to.

The sheriff talked with plaintiff, who is an attorney, and plaintiff proceeded to draw an agreement for carrying out the proposed plan for marketing the hogs. Apparently all were agreed as to the wisdom of doing this without further expense or delay. However, without waiting for the written agreement to be executed, defendant Glen Davis took the hogs to Omaha and sold them. He had the proceeds placed in two checks or drafts, one for $1,600, payable to the sheriff and himself jointly, the other (for "34 to 36 hundred dollars"), payable to himself.

There seems to be no implied criticism of this transaction and the evidence is not in dispute.

Defendant Davis, acting on his attorney's advice, endorsed and delivered the $1,600 check to the sheriff the evening of the same day he received it. The attorney testified:

"I instructed him to take the $1,600 one to the sheriff's office and deposit it * * * in accordance with my conversation that we would deposit that money in lieu of the attachment of the hogs."

The sheriff testified that defendant brought him the check and said, " 'I want to pay off' "; that he (the sheriff) said "to wait until morning and give it to Skip" (the clerk); and that defendant answered, " 'Oh, I don't want to juggle around * * * you will have time in the morning. I will just give it to you and you can give it to Skip.' "

Defendant's intention at this point, or the legal effect of what he did, is the ultimate question here. The sheriff seems to have understood he was proposing to pay plaintiff's claim and abandon his defense and counterclaim. The suggestion that defendant pay the money to the clerk indicated such an understanding.

However, as a witness (for plaintiff) the officer repeatedly refused to say that defendant *actually said* he wanted to pay plaintiff's claim:

"Q. Well, did he say this was to pay Mr. Rudolph's claim and interest? A. He didn't say Rudolph. He said, 'I want to pay off,' when he came in with the two drafts. Q. Well, what did he mean? A. Well, he wanted to pay off. Q. Off this attachment? A. Pay off this attachment."

Later, in the same direct examination:

"Q. When he came in with the check he said he wanted to *pay up* this attachment? A. *Pay off*." (Italics supplied.)

And again, on re-direct examination:

"Q. And when Mr. Davis came into the office he brought

the $1,600 [check] and said, 'I want to pay up?' A. 'Off.' Not 'up.' Q. Pay off? A. Pay off; yes. Q. You understood that to pay the claim of Mr. Rudolph? A. Yes, sir.''

The next morning, according to the clerk's testimony, the sheriff brought in the check and told the clerk ''he wanted to pay off the judgment, the landlord's attachment of Richard Rudolph against Davis. I asked him if he was right on that statement and he said he was. I asked him further what the statement was that Davis made to him when he brought the money in and he told me that Davis told him that he wanted to pay it off, and I asked him to repeat the words of Mr. Davis, which he did. * * * He said that Mr. Davis said to him he wanted to pay it off. I asked him whether he used that expression, and he said 'yes.' 'Well,' I says 'if he wants to pay it off then I will have to figure it from the petition. I don't have anything else to figure it from.' * * * I went and got the petition and the landlord's attachment and figured the amount due plus the costs of [on] a dismissal basis.''

Despite the clerk's obvious surprise and doubt as to whether the sheriff correctly reported or interpreted defendant's wishes neither officer called defendants' attorney or made any attempt to make sure of the situation. Based solely on the equivocal statement made him by the sheriff the clerk notified plaintiff and paid him the amount of his claim plus interest, took out the costs, and then tendered defendants' attorney a check for the small balance ($57.52). The tender was refused and this proceeding was thereafter instituted by motion for order to require plaintiff to redeposit the money, pending final determination of the case. From an order overruling this motion defendants, having obtained permission, now appeal.

■ I. Appellee contends that this being an action at law the decision of the court made on conflicting evidence cannot be reviewed here de novo. We do not think the form of the original action is determinative of the status of this appeal. The question of fact presented was not an issue in the main case. The proceeding involved a purely collateral matter, albeit a vital one to the further progress of the case.

The factual situation is unique. The court was asked to correct an alleged mistake of the officers of the court. No question is raised as to the appropriateness of the procedure followed. 26 C. J. S., Deposits in Court, section 9d; 24 Am. Jur., Funds and Deposits in Court, section 7; Agricultural Bond & Credit Corp. v. Courtenay Farmers Coop. Assn., 66 N. D. 122, 262 N. W. 453, 457.

The proceeding seems to fall within the class of cases in which the trial court has a judicial discretion reviewable by an appellate court only to determine whether that discretion has been abused. Wilson v. Coffey; 116 Cal. App. 635, 640, 3 P. 2d 62, 65. It is somewhat analogous to our cases involving motions to set aside default. Simmons v. Church, 31 Iowa 284; Craig v. Welch, 231 Iowa 1009, 2 N. W. 2d 745. Of course, there must be a clear showing of abuse of discretion to warrant a review on appeal. 5 C. J. S., Appeal and Error, section 1583; 3 Am. Jur., Appeal and Error, section 959. We think there is such showing here. The evidence is not in conflict and it fails completely to show that appellant intended to pay appellee's claim and abandon his own defense and counterclaim.

██ II. We have already detailed the facts. The sale of the hogs was first suggested by appellee. The suggestion, of course, necessarily implied that the proceeds of sale would be held under the attachment in lieu of the attached property. It could mean nothing else. Appellant's attorney, in his conversations with the sheriff, clearly suggested that, "Mr. Davis make the arrangements for the truck for all of the hogs, take them to market, and *place a portion of the money in the custody of the sheriff pending the determination of this suit.*"

The attorney instructed Davis, on the latter's return with the checks, "to take the $1,600 one to the sheriff's office and deposit it with the sheriff in accordance with my conversation that we would deposit that money *in lieu of the attachment of the hogs.*" The appellant testified: "I took it up there and deposited it with him [the sheriff]."

The $1,600 check or draft was made payable to Davis and the sheriff jointly, and Davis, after endorsing it, "deposited" it with the sheriff.

None of this was disputed by the sheriff. He testified:

"Q. And you were going to draw up a written contract were you? A. That's right. Q. Who was charged with the duty to prepare the contract? Do you know who was working the contract out? A. Mr. Rudolph [plaintiff] was. * * * Q. *Well, in other words, you had an agreement that provided that the property was to be sold on the open market and enough of the proceeds were to be held to secure the claim; that was the import of it?* A. *That's right!* Q. *So that the attachment could be released; that was it, wasn't it? A. That's right; yes sir.*" (Italics supplied.)

Is there any testimony here that reasonably indicates a change of intention by Davis on his way from his attorney to the sheriff's office that night? The words attributed to him by the sheriff were awkward and perhaps did not state the intention as clearly as his attorney had already stated it, both to the sheriff and to appellant, but it certainly does not mean more than the sheriff quoted him as actually saying: "I want to pay off * * * this attachment."

Notwithstanding the arrangement already agreed to, the sheriff assumed or understood that appellant intended to *pay appellee's claim.* But he was careful in his testimony to make it clear Davis did not so state: "He didn't say Rudolph. He said, 'I want to pay off' * * * *Pay off this attachment.*" Anything beyond that was the sheriff's own interpretation: "Q. *You understood* that to [mean] pay the claim of Mr. Rudolph? A. Pay off; yes."

In cases involving the granting or refusing to grant new trial an appellate court interferes more readily where new trial has been refused. Maland v. Tesdall, 232 Iowa 959, 970, 5 N. W. 2d 327. In an appeal from an order setting aside a default we have said the law favors trial on the merits. Craig v. Welch, supra, 231 Iowa 1009, 1010, 2 N. W. 2d 745. These are situations analogous to the one here. The decision appealed from in effect denies to appellants all opportunity to present their defense and counterclaim. We think the evidence does not reasonably support such denial.

Davis stood in a dual relationship to that transaction. He was not only a defendant but he was also the custodian of the attached property that had just been converted into cash. In the latter capacity he was there to account to the sheriff whom he represented. The proceeds of the sale were physically in his possession but constructively in the possession of the sheriff. The delivery of the check from him to the sheriff did not change its legal custody. It was still under the attachment, standing in lieu of the property originally attached.

The transaction that night was in legal effect the same as if the sheriff had made the sale and was already holding the proceeds. Any statement made by Davis in converting the sheriff's legal or constructive custody into actual physical possession must be construed in the light of the circumstances. So construed, it seems incredible that he was there that night, unaccompanied by his attorney, for the purpose of terminating the litigation. The sheriff's office was not the place nor was 9:30 p.m. the time for that purpose. Everything that had transpired before negatived such an intention.

There was pending at that moment on appeal to this court a case involving the title to the very premises the rent of which appellee here sought to recover. Davis v. Wilson, 237 Iowa 494, 21 N. W. 2d 553. In that case the Davises were asserting ownership as against one Wilson, and against Rudolph, appellee (plaintiff herein), who had just purchased the premises from Wilson. The Davises, appellants (defendants here), were in that case contending (as plaintiffs) that Wilson had held the legal title as security only for money owed by them to him and that Rudolph bought from Wilson with knowledge (actual or constructive) of the true situation. The claim sued on herein was assigned to Rudolph by Wilson and was for rent claimed to be due Wilson from the Davises for a part of the very time the latter were claiming to be the actual owners of the premises. (Incidentally, their contention was later upheld. See Davis v. Wilson, supra.)

The trial court in the instant case held:

"That the funds received by the plaintiff from the Clerk

were paid to the sheriff of this County by the defendant, Glen Davis voluntarily for the purpose of paying off the claim of the plaintiff against the defendant; that said funds were received by the Clerk from the Sheriff under instructions from the defendant that said funds [were] to be used to pay off plaintiff's claim against the defendant, and the Clerk paid said funds to the plaintiff and the plaintiff received said funds legally and not illegally as claimed by defendants.''

We think it clear this ruling was without substantial evidential support and must be reversed. The payment to appellee of $1,527.98 on December 30, 1944, was mistakenly and erroneously made and said amount must be ordered returned to the custody of the court pending final determination of the case.

Appellee cites various cases holding that one who has voluntarily paid a disputed claim with full knowledge of the facts cannot recover the sum paid. The proposition is sound but obviously not applicable here.

For the reasons herein stated the decision of the trial court is reversed and the case remanded for further proceedings in accordance with this opinion.—Reversed and remanded.

All JUSTICES concur.