GLEN DAVIS, appellee, v. RICHARD D. RUDOLPH, appellant.

No. 48003.

(Reported in 52 N.W.2d 15)

MARCH 4, 1952.

REHEARING DENIED MAY 9, 1952.

Richards & Richards, of Red Oak, White & Bruner, of Carroll, Rudolph & Rudolph and Dalton & Dalton, all of Atlantic, for appellant.

J. R. McManus, of Des Moines, and Bennett Cullison, of Harlan, for appellee.

OLIVER, J.—This action for malicious prosecution grows out of a landlord's attachment suit for $1400 farm rent brought by defendant-Rudolph against plaintiff-Davis and wife September 1, 1944. The sheriff levied upon one hundred twenty feeding hogs and other property of Davis. December 21, 1944, Rudolph made affidavit and application that the hogs be sold. By agreement, Davis sold the hogs and from the proceeds placed $1600 in the hands of the sheriff to be held in lieu of the hogs. The sheriff deposited this fund with the clerk of the district court. December 30, 1944, through mistake and error the clerk paid defendant-Rudolph $1527.98, which was the full amount of his claim plus interest. January 4, 1945, the sheriff released the attachment.

In a few days attorneys for Davis learned Rudolph had secured the money. Rudolph did not return it to the clerk. March 19, 1945, Davis made application to the district court for an order requiring Rudolph to do so. The application was resisted and trial thereon was had February 19, 1946. May 9, 1946,

the district court denied the application. Davis appealed to this court which held the fund "must be ordered returned to the custody of the court", and reversed the judgment of the district court. Rudolph v. Davis, 238 Iowa 474, 481, 26 N.W.2d 231. Rudolph's petition for rehearing was denied and procedendo to the district court issued May 10, 1947.

September 15, 1947, Davis presented to the district court a requested "ruling on motion pursuant to the procedendo." September 27, 1947, Rudolph dismissed the landlord's attachment case and filed his special appearance attacking the jurisdiction of the district court to make any order requiring him to return the money to the clerk. By an order filed December 1, 1947, after a hearing, the district court overruled Rudolph's special appearance and ordered him to return the money to the clerk forthwith. From that order Rudolph appealed to this court. Upon motion of Davis this court dismissed the appeal. Rudolph v. Davis, 239 Iowa 165, 30 N.W.2d 733.

Thereafter Davis filed in district court an affidavit showing contempt of court on the part of Rudolph for failure to comply with the order to return the money to the clerk. Upon Rudolph's motion the district court dismissed the proceeding. Davis appealed, and this court reversed the judgment of the district court, with directions to reinstate the cause and require Rudolph to show cause why he should not be held in contempt. State v. Rudolph, 240 Iowa 726, 37 N.W.2d 483.

September 10, 1949, the district court ordered Rudolph to show cause why he should not be held in contempt of court. Apparently the show-cause hearing was had October 8, 1949. On that date, either before the hearing or in connection therewith, Rudolph returned to the clerk the $1527.98 which he had secured December 30, 1944.

About April 28, 1948, Davis brought this action against Rudolph for damages for malicious prosecution of the attachment suit, alleging Rudolph knew Davis owed him nothing for rent and brought the action without probable cause and with the malicious intent to injure Davis. Davis prayed $3000 actual damages and $10,000 exemplary damages. The actual damages alleged were expenses incurred in securing the release of the attached property and fund, interest on the fund secured from

the clerk and held by Rudolph and .expense in caring for and loss and damage to the attached hogs.

Rudolph's answer denied most of the allegations of the petition and alleged the $1400 rent was owed him by Davis on a verbal lease from W. W. Wilson to Davis for the farming year of 1943, which claim and cause of action Wilson had assigned to Rudolph, March 4, 1944, and the attachment suit was brought in good faith and under the reasonable belief Davis owed the rent. Trial resulted in verdict and judgment for Davis for $3000 actual damages and this appeal by Rudolph.

The court instructed the jury Davis had the burden to show (1) that Rudolph instituted a landlord's attachment suit; (2) its termination favorably to Davis; (3) lack of probable cause in bringing the action; (4) malice in the instigation of the landlord's attachment suit, and (5) his damages. These were the essential elements of the suit. Schnathorst v. Williams, 240 Iowa 561, 36 N.W.2d 739, 10 A. L. R.2d 1199, and citations. Instruction 6 stated, in substance, probable cause as used in the instructions meant a knowledge by Rudolph of such a state of facts as would lead a person of ordinary caution and prudence, acting conscientiously, impartially, reasonably and without prejudice, to believe Davis owed him the rent. These instructions are not questioned in this appeal.

It may be stated this is not an action upon an attachment bond under section 639.14, Code of Iowa, 1950. In such actions the statute does not require that malice in instituting the attachment suit be proved. Connelly v. White, 122 Iowa 391, 392, 98 N.W. 144; Ames v. Chirurg, 152 Iowa 278, 285, 132 N.W. 427, 38 L. R. A., N. S., 120.

I. It is contended Rudolph's motion for directed verdict should have been sustained on the ground Davis failed to prove Rudolph did not have reasonable grounds for believing Davis owed him the $1400 rent which it was proper for him to collect by the attachment suit; otherwise stated in the language of the instructions, that Davis failed to prove lack of probable cause in the bringing of the attachment suit. The record shows the attachment suit terminated favorably to Davis when Rudolph dismissed it on or about September 27, 1947. The termination of the suit favorably to Davis made out a prima facie showing of

want of probable cause which cast upon Rudolph the burden of going forward with the evidence and overcoming the prima facie showing. Schnathorst v. Williams, supra, 240 Iowa 561, 36 N.W.2d 739, 10 A. L. R.2d 1199; Connelly v. White, supra, 122 Iowa 391, 98 N.W. 144.

Rudolph testified he believed the rent claim was valid when he started the landlord's attachment suit. The real question at this point is not his belief but "whether all of the facts, as he knew them or should have known, were such as to justify the ordinary, reasonably prudent, careful and conscientious person in reaching such a conclusion." Schnathorst v. Williams, supra, 240 Iowa 561, 577, 36 N.W.2d 739, 748, 10 A. L. R.2d 1199, 1211. See instruction 6, supra.

Pursuant to a contract made about February 28, 1944, Wilson conveyed the farm to Rudolph, March 3, 1944, at the stated price of $31,000. At the same time, for a stated one dollar and other valuable consideration, Wilson made a written assignment to Rudolph of the past-due $1400 rent for the crop year 1943, allegedly owed by Davis, reciting therein: "This claim is not transferable by the assignee." Rudolph testified Wilson told him "that goes with the farm." Rudolph did not testify he paid anything for the assignment other than the purchase price of the land.

March 11, 1944, Davis, who contended he occupied the farm not as a tenant but under an agreement to purchase it from Wilson (as was later adjudicated in Davis v. Wilson, 237 Iowa 494, 21 N.W.2d 553), paid Wilson $505 and was given a writing dated and signed by Wilson, reciting: "Received of Glen M. Davis, $505 to be applied on 1943 farm interest." Davis testified he did not then know of the sale to Rudolph. He testified that a day later he received a letter from Rudolph's father (with whom Rudolph was associated in the practice of law) relative to Davis renting the farm for the current year, that he then called at the Rudolph office and talked with Rudolph's father, telling him that he (Davis) owned the farm which he was buying from Wilson and showing Mr. Rudolph, Sr., his receipt from Wilson for interest. Davis then employed attorneys and on March 29, 1944, started action against Wilson and Rudolph to set aside the deed to Rudolph and compel Wilson to perform

his contract to convey the land for Davis. That suit (Davis v. Wilson, supra) was almost ready for trial in district court when Rudolph started the landlord's attachment suit.

Rudolph's petition in the attachment suit set out a copy of the assignment of the rent. Omitted therefrom (Rudolph claimed unintentionally) was the sentence: "This claim is not transferable by the assignee." Rudolph testified: "Mr. Wilson asked me to handle the operation myself. * * * he wanted me not to make any sale of the rental. He wanted me to proceed with it. * * *. He wanted to see the thing go through."

Rudolph testified also he believed the claim was valid until Wilson "went back on his original statement" in a deposition about April 1947, and that in September or October of that year he concluded the claim was *not enforceable* and dismissed the attachment suit. However, Davis v. Wilson, 237 Iowa 494, 21 N.W.2d 553, constituted an adjudication Davis was purchasing the farm from Wilson. Hence, Davis had not rented the land from Wilson and no rent could have been owed by him. The decision in Davis v. Wilson, supra, was filed February 5, 1946, and became final April 5, 1946, when a rehearing was denied. Rudolph, a practicing attorney and a party to that suit, was bound by the decision and it is a fair inference he was very familiar with it. This could be considered as bearing upon his credibility as a witness.

 As already noted, the termination of the attachment suit favorably to Davis made a prima facie showing of want of probable cause. Schnathorst v. Williams, supra, 240 Iowa 561, 574, 36 N.W.2d 739, 746, 10 A. L. R.2d 1199, 1209, points out that with this prima facie showing it is quite difficult to take the issue from the jury. Unless the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion therefrom, the question of probable cause is for the jury. In the case at bar various circumstances are inconsistent with the contention the attachment suit was instituted with probable cause. Considered as a whole the record requires the conclusion Rudolph failed to rebut the prima facie showing of the want of probable cause and that issue remained a question of fact. Hence, the trial court did not err in submitting it to the jury.

 II. It is well settled the malice required to support an

action for malicious prosecution may be inferred from want of probable cause. Connelly v. White, supra, 122 Iowa 391, 393, 98 N.W. 144, 145; Schnathorst v. Williams, supra, 240 Iowa 561, 574, 36 N.W.2d 739, 747, 10 A. L. R.2d 1199, 1210. Moreover, the jury could have found that early in 1946 Rudolph knew his claim was not merely unenforceable but was invalid. He testified he continued to resist efforts on the part of Davis to get back the money he had secured from the clerk, until October 1949. In Rudolph v. Davis, 238 Iowa 474, 480, 26 N.W.2d 231, filed early in 1947, this court noted the contention Davis and wife were the actual owners of the premises had been upheld in Davis v. Wilson, supra. The record indicates the district court was about to consider an application to require Rudolph to return the money as this court had directed, when Rudolph dismissed the attachment suit and at once entered his special appearance, contending the district court no longer had jurisdiction to so order. The jury could have drawn the inference the immediate purpose of the dismissal was to deprive the court of jurisdiction to require Rudolph to return to the clerk the money which belonged to Davis. Therefore, under the record this issue also was for the jury.

III. The $3000 verdict and judgment for actual damages was slightly in excess of the total damages concerning which there was evidence. Among the items of damage claimed were the expense of caring for the one hundred twenty attached feeding hogs, the expense of treating hogs which contracted a disease and the loss from the death of some of the hogs. Rule of Civil Procedure 260 provides:

"Levy on personalty may be made under an attachment or general execution by either of the following methods, but no lien is created until compliance with one of them.

"(a) By the officer taking possession of the property * * *.

"(b) If the creditor or his agent first so request in writing, the officer may view the property, inventory its exact description at length, and append such inventory to the execution, with his signed statement of the number and title of the case, the amount claimed under the execution, the exact location of the property and in whose possession; and file with the county recorder of the county where the property is located his certified transcript

of such inventory and statement. Such filing shall then be constructive notice of the levy to all persons. The recorder shall index the transcript as a chattel mortgage * * *."

This attachment was made under R. C. P. 260(b). Higgins v. Drennen, 157 Mass. 384, 385, 32 N.E. 354, 355, states: "This form of attachment is like a recorded lien." We assume, without so holding, the assignment of rent carried with it the landlord's lien and the right to enforce the same by landlord's attachment without bond.

■ The attached property remained in the possession of Davis. He continued to fatten and care for the attached hogs as he would have done had they not been attached, and when the hogs were ready for the market (by agreement) he sold them at the O. P. A. ceiling price and secured the proceeds of $4727.21, of which he deposited $1600 with the sheriff in lieu of the attached property. It is clear the attachment did not cause or contribute to the expenses and losses connected with the fattening, caring for and marketing the attached hogs. Hence, Davis was not entitled to recover from Rudolph upon those items and the trial court erred in overruling the motion to withdraw them from consideration by the jury.

■ In so ruling the trial court apparently felt bound by an order of another judge overruling a motion to strike the allegations from the petition. The earlier ruling did not become the law of the case and the trial court was not obliged to follow it. Kuiken v. Garrett, 243 Iowa 785, 51 N.W.2d 149; Richman v. Board of Supervisors, 77 Iowa 513, 42 N.W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; Seery v. Murray, 107 Iowa 384, 390, 77 N.W. 1058; Darling v. Blazek, 142 Iowa 355, 358, 120 N.W. 961.

■ IV. Another item of damages evidently allowed was interest on the $1527.98 which Rudolph withheld from December 30, 1944 until October 8, 1949, during which period Davis was deprived of the use thereof. At the legal rate of five per cent per annum this amounted to $364.50. It was properly allowable. Bishop v. Baird & Baird, 238 Iowa 871, 876, 29 N.W.2d 201.

■ V. The evidence showed the expense incurred by Davis for attorney fees in securing the return of the money withheld by Rudolph was $1500. The verdict must have included this. Although the expense incurred for such services may appear

large in proportion to the amount involved, the extended litigation in district court and three appeals to this court required so much legal work that the charge does not seem unreasonable. Attorney fees incurred in securing the release of attached property have been held recoverable in an action on the attachment bond. Stults v. Northwestern Inv. Co., 198 Iowa 1056, 200 N.W. 696, and citations. And counsel fees for establishing the absence of any cause of action have been held recoverable in a suit for malicious prosecution. Connelly v. White, 122 Iowa 391, 395, 98 N.W. 144. We conclude the expense incurred in recovering the attached money was properly allowable.

VI. In establishing the expense incurred for attorney fees, one of the attorneys testified to the value of the services rendered by himself and associates in securing the return of the fund withheld by Rudolph. Error is assigned to the refusal of the trial court to give a requested instruction that the jury is not necessarily required to accept the opinion of expert witnesses concerning the value of services of attorneys, but may use its own judgment, etc., taking into consideration all other evidence, etc. Although the requested instruction may have been proper we conclude its refusal was not reversible error under the circumstances of this case.

Other assigned errors have been considered and determined to be without substantial merit.

The error in submitting to the jury the items of damage involving the feeding hogs requires a reversal unless appellee-Davis reduces the judgment to the amount allowed by the jury for interest and attorney fees. If within thirty days from the date of the filing of this decision or within such additional time as may be granted by a judge of this court Davis files a remittitur reducing the judgment to $1864.60 with interest thereon from July 22, 1950, and district court costs, the cause will stand affirmed; otherwise it will be reversed.

The brief of appellee-Davis was not filed until the day the appeal was orally argued which was a considerable period of time after the expiration of the time for filing the same. The motion to strike the brief is sustained and the cost of printing the same is taxed to appellee. If appellee-Davis files the remittitur the remaining costs in this court shall be taxed two thirds

to appellant and one third to appellee; otherwise all costs upon appeal shall be taxed to appellee-Davis.—Affirmed on condition.

THOMPSON, C. J., and BLISS, GARFIELD, WENNERSTRUM, SMITH, MULRONEY, and HAYS, JJ., concur.