OLE ASHLAND, JR., appellee, v. LAPINER MOTOR COMPANY, a corporation, appellant.

No. 48842.

(Reported in 75 N.W.2d 357)

MARCH 6, 1956.

John A. Senneff, of Mason City, for appellant.

Mason & Stone, of Mason City, for appellee.

HAYS, J.—In January 1950 the Lapiner Motor Company, a corporation, sold to plaintiff a Cadillac car under a conditional sales contract, and as a down payment took a chattel mortgage on his Chevrolet pickup truck. In January 1951 Nate Lapiner, an officer and stockholder of the corporation, caused a writ of replevin to issue for the recovery of both cars, plaintiff being in arrears in his payments. George G. Dunn, an attorney, handled the proceedings. A deputy sheriff, with the writ of replevin, contacted the plaintiff, told him he had a writ of replevin and inquired as to the whereabouts of the cars. Plaintiff stated the Cadillac was out of the state and he did not know just where the Chevrolet was. No papers were served upon plaintiff in the replevin action. Shortly thereafter the officers were advised that the plaintiff was driving the truck about Mason City and the Cadillac was back in the state. These facts were relayed to Dunn.

Later that month Dunn contacted Harry Gelt, a stockholder and secretary and treasurer of the corporation, and told him that the replevin action had been unsuccessful and advised that the company take action against plaintiff for concealing mortgaged property; that he was guilty of a crime and should be punished. After several conferences, Gelt, at the instance and request of Dunn, signed an information charging plaintiff with embezzlement of mortgaged property, the Chevrolet, contrary to section 710.12, Code of 1950. On Saturday, February 3, 1951, plaintiff was arrested at Iowa Falls, taken to Mason City and lodged in jail. At no time was he taken before a magistrate or was a bail bond set. On Monday, February 5, Dunn asked Oliver Olson, an employee of the corporation in charge of collections, financing and insurance, to meet him at the sheriff's office, which he did.

Plaintiff was brought from jail to the sheriff's office and there was a conference between the three. Olson testified: "Mr. Ashland was brought into the sheriff's office that morning. Mr. Dunn told Mr. Ashland that we were not after him on these things. That if he would divulge where the cars were and place them in custody or storage we would give him ample time to redeem them, but we had to know where they were, and this was why this action was taken. Mr. Ashland did not say where they were. Dunn also told him he could have plenty of time to sell them, or, if he wanted to, he could bring some prospects in to see these and give him an opportunity to sell them and salvage his equity he had in them." Ashland wanted to store them in the Chevrolet garage. Olson insisted they be placed in the company garage. He called the bookkeeper to ascertain the amount plaintiff owed to the company. He further testified: "Mr. Dunn, at that time, was acting as attorney for the corporation, and I was aware of what he was doing as an employee. What Mr. Dunn was doing was with my knowledge."

Following this conference, the following instrument was executed:

"February 5, 1951

"An agreement is hereby made between Ole Ashland, Jr. and Lapiner Motor Co. that the 1948 Chevrolet

truck and the 1949 Cadillac tudor shall be stored at the Lapiner Motor Co., Mason City, Iowa, and shall remain in storage for a period of ten days, and, if either one or both are not paid off in full at the end of ten days, such property shall be repossessed and become the property of Lapiner Motor Co., according to terms of contract.

"Signed: Lapiner Motor Co.
"By O. Olson"

Immediately thereafter, plaintiff, accompanied by a deputy sheriff, took the cars to the company garage. He was then released from custody, and has heard nothing further regarding the criminal charges. Mr. Gelt testified he knew the charge had been dismissed. The justice of the peace testified he was advised by telephone that the matter had been adjusted. The record indicates Dunn so advised him. Within a short period of time plaintiff sold the Cadillac and made full settlement with the company, including a $30 charge for car storage.

This action for malicious prosecution was commenced against Lapiner Motor Company, Nate Lapiner and Harry Gelt. Nate Lapiner died prior to the trial. His estate was substituted as a party defendant, and later the trial court dismissed the action as against it. The jury returned a verdict in favor of Gelt and awarded damages against Lapiner Motor Company. The company appealed. There is no cross-appeal.

Appellant assigns 12 alleged errors; but the basic proposition is the alleged error arising from the overruling of its motions for a directed verdict, for a new trial and for a judgment notwithstanding the verdict.

I. In a malicious prosecution the plaintiff carries the burden of establishing five basic facts: (1) institution of the original proceedings by the defendant; (2) termination thereof in a manner favorable to the plaintiff; (3) want of probable cause; (4) that it was done maliciously; and (5) resulting damage to plaintiff. Two of these factors are not seriously denied. The dismissal or abandonment is not denied, and such a termination meets the requirements. Shaul v. Brown, 28 Iowa

37, 4 Am. Rep. 151; Richmond v. Whitaker, 218 Iowa 606, 255 N.W. 681; 54 C. J. S., Malicious Prosecution, section 57(a). Resulting damage may be conceded.

A corporation acts solely through its officers and agents and may be held in damages only by or through their acts, either contractual or tortious; and then only if authorized or directed; were within the scope, or apparent scope, of their authority; or were subsequently ratified and confirmed with full knowledge of the facts. Restatement of the Law, Agency, Volume 1, sections 94, 99 and 246; 34 Am. Jur., Malicious Prosecution, section 89; White v. International Textbook Co., 173 Iowa 192, 155 N.W. 298; Turner v. Zip Motors, Inc., 245 Iowa 1091, 65 N.W.2d 427, 45 A. L. R.2d 1174; annotation 18 A. L. R.2d 402.

A suit for malicious prosecution and one for an abuse of legal process vary widely in many basic factors although the same facts often may support either proceedings. In malicious prosecution, such as the theory upon which this case was tried, the gravamen is the initial institution of the criminal proceedings, while an abuse of process is the misuse of process no matter how properly obtained. Restatement, Law of Torts, section 682; Hall v. Field Enterprises, D. C., 94 A.2d 479; annotation 14 A. L. R.2d 264, 322.

In the instant case the information was signed by Harry Gelt, but we think the record shows that such action was taken in good faith and in complete reliance upon the advice, and at the request, of Dunn. We think such a showing entitled Gelt to the benefit of the rule that reliance upon an attorney's advice after a full disclosure of the facts constitutes a defense. Here the facts were entirely known to Dunn. See: Granteer v. Thompson, 203 Iowa 127, 208 N.W. 497; Richmond v. Whitaker, 218 Iowa 606, 255 N.W. 681; Schnathorst v. Williams, 240 Iowa 561, 36 N.W.2d 739, 10 A. L. R.2d 1199. The jury found for Gelt, upon what basis we need not speculate. If this action involved only the appellant and its official, Harry Gelt, we would be inclined to agree with appellant's contention that Gelt not being liable, it must follow that the company is not.

However, much more appears in this record. We think the record fairly indicates that the institution of criminal proceedings was Dunn's brain child, and that he, not Gelt, was the

602

procuring cause. Sergeant v. Watson Bros. Transp. Co., 244 Iowa 185, 52 N.W.2d 86. It might here be stated that Dunn died prior to the trial. That Dunn was acting as the agent and representative of the company is not denied, and we think the basic question goes to Dunn's status and the appellant's connection therewith.

 Satisfactory termination of the original proceedings creates a prima-facie showing of want of probable cause which in turn allows a presumption of malice. Gripp v. Crittenden, 223 Iowa 240, 271 N.W. 599; Davis v. Rudolph, 243 Iowa 744, 52 N.W.2d 15; 54 C. J. S., Malicious Prosecution, section 43. Evidence of use of criminal process for private purpose also shows the existence of malice. Schnathorst v. Williams, supra. See also Kool v. Lee, 43 Utah 394, 134 P. 906. Clearly under this record a prima-facie case was made as to Dunn, were he charged with malicious prosecution.

 Oliver Olson was an admitted employee of appellant. He was in charge of collections, which presumably included plaintiff's account. He was the one called by Dunn to come to the sheriff's office. He was the one who signed the agreement in the name of Lapiner Motor Company, and as a result of which it obtained possession of the cars. He stated he had full knowledge of Dunn's activity. Such knowledge becomes the knowledge of his principal. Restatement of the Law, Agency, section 278; Stephenson v. Southern Pac. Co., 93 Cal. 558, 29 P. 234, 15 L. R. A. 475, 27 Am. St. Rep. 223; Turner v. Zip Motors, Inc., supra. That appellant accepted the benefits of Dunn's scheme cannot be denied, and this amounts to an affirmance or ratification of Dunn's tortious action. Restatement of the Law, Agency, sections 100 and 218; 54 C. J. S., Malicious Prosecution, section 63; White v. International Textbook Co., 173 Iowa 192, 155 N.W. 298. We think a jury question was presented as to appellant's liability.

 II. Error is assigned in the giving of three instructions. We see no need to set them out. They deal with the separate liability of Gelt and the company. Objections thereto are primarily based upon the erroneous conclusion that the company can be liable only if Gelt is liable. We find no error in the instructions.

III. Error is asserted for refusal to give certain requested instructions. Requested Instruction No. 1 was to the effect that if plaintiff did willfully conceal mortgaged property, there must be a verdict for defendants. No issue as to the truth of the charges is raised, nor do sufficient facts appear in the record to submit such question to the jury.

Requested Instruction No. 3 was to the effect that Ashland's refusal to tell the deputy sheriff the whereabouts of the cars amounted to a concealment. Such is not a correct statement of the law.

Requested Instruction No. 4 was that defendants were not responsible for the manner of arrest of plaintiff or the failure to take him before a magistrate. The court did so instruct with the addition thereto of "unless he was so held at the instigation of defendants or their counsel."

We find no error relative to the instructions, given or refused.

IV. Finally, errors are assigned relative to reception of certain testimony dealing primarily with damages, and also the verdict was excessive. It was $3000 actual and $2000 exemplary. Without going into details, we find no error as to such testimony and nothing in the record indicating passion and prejudice; nor is the verdict so excessive as to shock the conscience.

Finding no error, the judgment of the trial court should be and is affirmed.—Affirmed.

LARSON, C. J., and GARFIELD, OLIVER, WENNERSTRUM, SMITH, THOMPSON, and PETERSON, JJ., concur.

BLISS, J., takes no part.