RASMUSSEN BUICK–GMC, INC., an
Iowa Corporation, Appellant,

v.

Julie A. ROACH, Appellee.

No. 65225.

Supreme Court of Iowa.

Jan. 20, 1982.

Jack W. Peters of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for appellant.

Steven A. Scholer and Douglas Lash of Porter, Lash, Reilly & Tauke, Council Bluffs, for appellee.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, ALLBEE and LARSON, JJ.

LeGRAND, Justice.

This appeal from a judgment in favor of defendant on her counterclaim for malicious prosecution raises only the issue of sufficiency of the evidence. Defendant cross appeals from the trial court's refusal to submit additional grounds for recovery asserted in her counterclaim. We affirm on both appeals.

In 1979 defendant, Julie A. Roach (Roach), bought a used 1976 Pontiac Grand Prix automobile from Rasmussen Buick-GMC, Inc. (Rasmussen), an automobile dealer in Council Bluffs. As part of the $4,595 purchase price, she traded her 1974 Chevrolet Camaro, which was appraised at $1,845, and signed a purchase agreement for the balance of $2,750.

At the time of the transaction, the Camaro's odometer was inoperative, a fact which Roach says was made known to Rasmussen's sales representatives. Rasmussen, on the other hand, claims it did not know of this fact until a potential buyer of the Camaro called attention to an old oil-change sticker attached to the car. The sticker, which was nine months old, listed the car's mileage at the identical figure the odometer

showed at the time the car was traded. This meant the mileage traveled between the date of the oil change and the date of the trade-in had not been recorded.

Rasmussen notified Roach that the car had been over-appraised because of the false odometer statement she had signed at the time of trade-in and demanded an additional $1,000, which she refused to pay.

Rasmussen then informed the Federal Bureau of Investigation that Roach had furnished a false odometer statement. After an investigation, the FBI submitted a report to the United States Attorney, who charged Roach with rolling back the odometer in violation of 15 U.S.C. §§ 1984, 1990c. The charge was later dismissed without trial.

Rasmussen sued Roach, asserting the alleged difference in the car's value as appraised and its true value was $1,064.60. The petition asked treble damages under the provisions of 15 U.S.C. § 1989, which authorizes civil actions to enforce liability for violations of odometer requirements. Roach filed a counterclaim for malicious prosecution. A jury rejected Rasmussen's claim and awarded Roach $18,000 on her counterclaim. Rasmussen was also ordered to pay $738.98 toward Roach's attorney fees.

I. *Malicious Prosecution.*

In 1974 Congress passed legislation making it a crime to disconnect, reset, or alter a car's odometer. 15 U.S.C. § 1984. It also made it a crime to submit a false statement of the actual mileage a car had traveled. 15 U.S.C. § 1988.

Roach's tort action for malicious prosecution is based on the allegation she was falsely accused and later prosecuted for violation of section 1984.

In *Mills County State Bank v. Roure*, 291 N.W.2d 1, 3 (Iowa 1980), we set out these six elements of malicious prosecution:

(1) a previous prosecution, (2) instigation or procurement thereof by defendant, (3) termination thereof by an acquittal or discharge of plaintiff, (4) want of probable cause, (5) malice in bringing the prosecution on the part of the defendant, and (6) damage to the plaintiff.

This appeal claims only that the evidence is insufficient to show Rasmussen instigated or procured the prosecution which is the second of the elements listed above. We limit our review accordingly.

Rasmussen alleges Roach gave a false odometer statement at the time she traded her Camaro. The circumstances regarding this issue are determinative of this appeal, and we examine the evidence concerning them in detail.

Shortly after Roach bought the Camaro, the odometer became inoperative. It was never repaired. The car was driven for approximately nine months without registering mileage. There is substantial evidence that Roach told Rasmussen's employees of this while negotiating for the purchase of the Grand Prix. This evidence comes from Roach herself and from her mother. There is also substantial evidence that Roach signed the odometer statement in blank at Rasmussen's request. It was later completed by Rasmussen's sales manager, who inserted a figure of 37,514 miles, which he knew was incorrect.

In addition to this, Steve Kinstler, Rasmussen's sales manager, and Gary Runyon, a car salesman, test-drove the Camaro before accepting it as a trade. Both say they "cannot remember" if the odometer was then operating. Finally, after the car was taken in trade and while it was being serviced for resale, a repair order was issued by Rasmussen to its service department directing the repair of the "speedo" (speedometer). It is conceded that if speedometer needed repair, the odometer probably did too.

In the face of this evidence tending to show knowledge of the true circumstances, Ralph Leslie, Rasmussen's general manager, testified he did not know of the odometer malfunction until sometime later where an unidentified customer called the oil change sticker to his attention. Even if this is accepted as true, it does not excuse Rasmus-

sen. A corporation acts through its officers, employees, and agents, and it may be liable for malicious prosecution based on the knowledge and acts of its officers or agents. *Ashland v. Lapiner Motor Co.*, 247 Iowa 596, 601, 75 N.W.2d 357, 360 (1956).

In the present case, there was abundant evidence permitting the jury to find that both Rasmussen's salesman and its sales manager knew the odometer was not functional at the time this transaction was completed. Rasmussen is legally held to have this same information. The jury was also justified in finding Rasmussen's report to the FBI claiming Roach had furnished a false odometer statement was itself false. The jury could further have found it was knowingly false in view of the fact Ralph Leslie, who furnished the incriminating information, is the one who authorized repairs to the car's speedometer and odometer. Thus at the very time he said the odometer was functional, Leslie was authorizing his service department to repair it. Leslie explained this apparent conflict, but the jury was not obliged to accept his explanation.

This brings us to Rasmussen's rationale for insisting it did not instigate or procure the criminal charge against Roach because the information furnished to the FBI did not support the exact charge brought. Roach was accused of violating a statute which provides that no person shall "disconnect, reset, or alter or cause to be disconnected, reset, or altered, the odometer of any motor vehicle with intent to change the number of miles indicated thereon." 15 U.S.C. § 1984.

Rasmussen says the information furnished to the FBI might have supported a charge that Roach gave a false odometer statement in violation of 15 U.S.C. section 1988, but it could not have been a factor in charging her with violating section 1984. We reject this argument because it ignores the fact the jury could have found Rasmussen knowingly gave false information to the FBI, which resulted in a criminal prosecution.

Rasmussen relies on *Lukecart v. Swift & Co.*, 256 Iowa 1268, 1281, 130 N.W.2d 716, 723 (1964), where we quoted this comment with approval:

In Restatement of the Law Torts, sec. 653, comment b, the rule is stated:

" 'A person who does not himself initiate criminal proceedings may procure their institution in one of two ways: (1) by inducing a third person, either a private person or a public prosecutor to initiate them, or (2) by prevailing upon a public official to institute them by filing an information. It is, however, not enough that some act of his should have caused the third person to initiate the proceedings. One who gives to a third person, whether public official or private person, information of another's supposed criminal conduct or even accuses the other person of the crime, causes the institution of such proceedings as are brought by the third person. The giving of the information or the making of the accusation, however, does not constitute a procurement of the proceedings which the third person initiates thereon if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit.' "

We point out that the Restatement (Second) of Torts has made no change in this comment.

Although this states the general rule, it does not apply when the information given is knowingly false. In such cases we instead apply the rule expressed in the Restatement (Second) Torts § 653, comment g:

g. *Influencing a public prosecutor.* A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer

information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

If, *however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible*, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, *or that the information furnished by him upon which the official acted was known to be false.*

(emphasis added). In the present case, the prosecutor did not file the precise charge Rasmussen believes should have been filed. Nevertheless, Rasmussen put in motion the procedure which caused Roach to face criminal charges. The jury could find the information furnished was knowingly false because Roach had informed the corporation's agents of the true facts and because of information readily available from the corporations records regarding repairs ordered to be made to the speedometer. Under such circumstances, Rasmussen was the real force behind the prosecution. The jury could have found there would have been no prosecution absent the false information furnished by Rasmussen. Rasmussen cannot escape liability because the false information resulted in a charge other than the one it thought should be brought. Support for this conclusion is found in *Sergeant v. Watson Bros. Transportation Co.*, 244 Iowa 185, 193, 52 N.W.2d 86, 90–91 (1952); *Minard v. Boss Hotels Co.*, 241 Iowa 606, 613, 40 N.W.2d 276, 278 (1949); *Bair v. Shoultz*, 233 Iowa 980, 983, 7 N.W.2d 904, 905 (1943); 54 C.J.S. *Malicious Prosecution* § 14, at 966–67 (1948).

We hold the trial court was right in denying Rasmussen's motion for directed verdict and in overruling its later motion for judgment.

II. *Cross Appeal for Emotional Distress.*

Roach asked a separate recovery for emotional distress resulting from Rasmussen's actions. The trial court granted a motion for directed verdict as to this claim, and we agree.

■ Emotional distress was specifically submitted as one of the elements of damage in the division asking redress for malicious prosecution. The verdict in favor of Roach included compensation for that item. She is not entitled to recover again for emotional distress. *Team Central, Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 925 (Iowa 1978).

III. *Cross Appeal for Rasmussen's Violation of 15 U.S.C. Section 1988(c).*

■ Roach asserted a right to recover under 15 U.S.C. section 1989 because Rasmussen accepted an incomplete odometer statement, which is prohibited by section 1988(c).

Section 1989 provides as follows:

(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

Roach is not entitled to the benefits of this statute. It was intended to protect purchasers, not sellers, of used motor vehi-

378

cles. The whole purpose and history of the legislation expressly supports this view. 15 U.S.C. § 1981 ("[statute's purpose is] to establish certain safeguards for the protection of *purchasers* with respect to the sale of motor vehicles having altered or reset odometers)." (emphasis added).

We find no reversible error in any of the issues raised on the appeal or the cross appeal. The judgment is affirmed.

AFFIRMED.